Doye E. GREEN, Trustee in Bankruptcy for Johnnie Earl Mills, Jr., Bankrupt, Appellant,

v.

KING EDWARD EMPLOYEES' FEDERAL CREDIT UNION, Appellee.

No. 23511.

United States Court of Appeals Fifth Circuit.

March 3, 1967.

Rehearing Denied April 20, 1967 en banc.

614

Robert A. Berlin, Macon, Ga., for appellant.

F. Kennedy Hall, Bloch, Hall, Groover & Hawkins, Macon, Ga., for appellee.

AINSWORTH, Circuit Judge:

On July 31, 1964, Johnnie Earl Mills, Jr., then a resident of Florida, borrowed a sum of money from the King Edward Employees' Federal Credit Union and gave a 1963 Ford automobile as se-

curity. Mills executed a note for $1,-983.43 payable to the Credit Union and entered into a conditional sales contract, agreeing that title to the automobile would remain with the Credit Union until the loan was paid. Mills obtained a Florida Motor Vehicle Certificate of Title which showed a first lien in favor of the Credit Union in the sum of $1,983.43. The applicable Florida law was complied with in order to protect and perfect the security interest of the Credit Union against subsequent purchasers and other lienholders.[1]

On January 1, 1965, Mills moved to Georgia, taking the automobile with him. No provision in the conditional sales contract prohibited him from removing the car from Florida to another state. On February 24, 1965, Mills obtained a 1965 motor vehicle tag and a Georgia Vehicle Registration Certificate. He did not, however, obtain a Georgia Title Certificate as required by Georgia law.[2] On March 22, 1965, Mills was adjudicated a bankrupt and the Referee declared title to the automobile to be vested in the Trustee. The Credit Union then filed a reclamation petition against the Trustee for the automobile, which was denied by the Referee. The Referee's decision was reversed by the court below which declared title to be vested in the Credit Union. We affirm.

Trustee contends that his position is one of a creditor without notice of the Credit Union's security interest inasmuch as neither the Credit Union nor the bankrupt complied with certain provisions of the Georgia Motor Vehicle Cer-

1. The fact that Florida law was complied with is not disputed. The pertinent provisions of the law are contained in Title 22, Section 319.27, Florida Statutes Annotated, relative to notice of lien on motor vehicles, notation on certificate and recordation of lien.

2. The applicable provision, section 68–406a of the Georgia Code Annotated, reads as follows: "(a) Except as provided in section 68–404a, every owner of a vehicle, which is required to be registered in this State by law and for which no certificate of title has been issued by the

Commissioner, shall make application to the Commissioner for a certificate of title to the vehicle according to the model of the vehicle. Such application is to be made in the following manner: All 1963 model vehicles and all successive model vehicles thereafter shall have a certificate of title: Provided, that by January 1, 1969, all model vehicles shall have a certificate of title. Once a vehicle is modeled in such a year as to bring it under the provisions of this Chapter, such vehicle, which is thereafter required to be registered in this State, shall have a Georgia certificate of title."

tificate of Title Act (Chapter 68–4A, Ga. Code Ann.) hereinafter referred to as the "Title Act."

The Title Act provides in pertinent part the following:

"68–421a.

"(a) The security interest in a vehicle of the type for which a certificate of title is required shall be perfected and shall be valid against subsequent creditors of the owner, subsequent transferees and the holders of security interests and liens on the vehicle by compliance with the provisions of this Chapter.

"(b) A security interest is perfected by delivery to the Commissioner of the existing certificate of title, if any, and an application for a certificate of title containing the name and address of the holder of a security interest, the date of his security interest and the required fee. It is perfected as of the time of its creation if the delivery is completed within 10 days thereafter; otherwise, as of the date of the delivery to the Commissioner. When the security interest is perfected as provided in this subsection (b), it shall constitute notice to everybody of the security interest of the holder.

\* \* \* \* \* \*

"(d) If a vehicle is subject to a security interest of lien when brought into this State, the validity of the security interest or lien is determined by the law of the jurisdiction where the vehicle was when the security interest attached subject to the following:

\* \* \* \* \* \*

"(2) If the security interest or lien was perfected under the law of the jurisdiction where the vehicle was when the security interest attached, the following rules apply:

\* \* \* \* \* \*

"(A) If the name of the holder of a security interest or lien is shown on an existing certificate of title issued by that jurisdiction, his security in-

terest or lien *continues perfected* in this State." (Emphasis supplied.)

While admittedly neither the Credit Union nor the bankrupt complied with section (b) of the Title Act, such compliance was unnecessary to protect the security interest because of the provisions of section (d) (2) (A) which not only recognizes the validity of the security interest in automobiles on which a foreign-perfected lien has attached but allows the security interest to continue perfected in Georgia, notwithstanding the fact that the Act provides an additional method for the perfection of a security interest.

 We do not agree with the Trustee that the provisions of section (b) of the Title Act are the exclusive means of holding a perfected security interest in an automobile and that section (d) merely continues perfected a foreign security interest until the new Georgia resident applies for and receives his Georgia license tag. The rationale of this conclusion is that under section 68–406a of the Georgia Code the owner of an automobile must apply for a title certificate when the automobile is registered. This construction of section (d) violates the obvious meaning of the section. It is not our province to impute to the statute an intention to restrict the time within which a security interest acquired in another state continues perfected. We must assume that the legislative purpose is expressed by the ordinary meaning of the words used in the statute. Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

There appear to be no dispositive cases interpreting section (d) (2) (A) of the Title Act. Both the Referee and Trustee admittedly were unable to find a case precisely in point on the issue here. The Georgia Court of Appeals, however, has had occasion to consider section 421a (b) and has concluded that the "perfecting and giving notice" provisions thereof are not the exclusive means for giving notice and that actual notice is sufficient

to protect a lienholder against a subsequent creditor-transferee, even though the lienholder had failed to comply with section 421a(b), (c) of the Title Act. See Franklin Finance Company v. Strother Ford, Inc., 1964, 110 Ga.App. 365, 138 S.E.2d 679.

As noted by the court below in a well-reasoned opinion, the meaning of the word "perfected," while not found in the Title Act, is discussed in the following official Code comment to the Uniform Commercial Code, Title 109A, § 9–303, Ga.Code, pertaining to security interests:

" 'Perfected' means that *the secured party has taken all the steps required by the article * * *.* A perfected security interest may still be or become subordinate to other interests * * * but in general after perfection the secured party is protected against creditors and transferees of the debtor and in particular against any representative of creditors in insolvency proceedings instituted for or against the debtor." (Emphasis supplied.)

Applying this definition to section (d) (2) (A) of the Title Act, it is obvious that the security interest was perfected in Florida when the required steps were taken by the bankrupt and Credit Union in causing the lien in favor of the Credit Union to be inscribed on the Florida certificate of title. According to the Florida conditional sales contract, executed under Florida law, title to the automobile was to remain in the Credit Union until the debt by Mills was paid. Under the Georgia Title Act the validity of the security interest is determined by the law of the jurisdiction where the security interest attached, i. e., Florida. The only reasonable interpretation of the Title Act is that section (d) clearly creates an exception to section (b) thereof and that the security interest of the Credit Union has priority over the claim of Trustee or any other creditors. To hold otherwise would violate the cardinal rule of statutory construction that effect should be given to all of the provisions of a statute, if rea-

sonably possible; otherwise, section (d) providing for the continuance of the security interest would be rendered meaningless. See Jarecki v. G. D. Searle & Co., 367 U.S. 303, 81 S.Ct. 1579, 6 L.Ed. 2d 859 (1961); McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164 (1938).

Affirmed.