UNITED STATES of America,
Appellee,

v.

Harold Lawrence BLASIUS, Appellant.

No. 453, Docket 32117.

United States Court of Appeals
Second Circuit.

Argued April 25, 1968.

Decided July 8, 1968.

Certiorari Granted Nov. 18, 1968.
See 89 S.Ct. 375.

See also, D.C., 277 F.Supp. 119.

Louis Grossman, New York City
(Grossman, Grossman & Feigen, Robert
S. Feigen, New York City, and Peyton

Ford, Washington, D. C., on the brief), for appellant.

Charles J. Fanning, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., John R. Wing and Pierre N. Leval, Asst. U. S. Attys., Southern Dist. of New York, on the brief), for appellee.

Before HAYS, ANDERSON and FEINBERG, Circuit Judges.

ANDERSON, Circuit Judge:

In 1950 Harold Lawrence Blasius, through taking and passing a prescribed examination, became a Registered Patent Agent, recognized to practice before the Patent Office. From then until June 30, 1959 he solicited patent business through advertising in various periodicals and by other means. On July 1, 1959 a new rule of the Patent Office, which prohibited advertising by Registered Patent Attorneys and Patent Agents, became effective. Blasius, however, persisted in advertising because he was of the opinion that its discontinuance would be fatal to his business. Because of his violations of the rule Blasius' recognition was withdrawn and on February 9, 1961 he was ordered excluded from practice. The

exclusion order of the Patent Office provided that he could apply for reinstatement after a year if, during that time, he had ceased all advertising. But he made no effort to take advantage of the proviso and continued to advertise in such nationally circulated magazines as Popular Science, Popular Mechanics and Mechanix Illustrated and to send out letters of solicitation by mail.

On October 8, 1963 an information was filed against Blasius charging him with fifty-two counts of violations of Title 35 U.S.C. § 33.[1] Fifty of these concerned advertisements in the above mentioned magazines and two were based upon solicitation letters sent to individuals.[2] In all of them Blasius held himself out as qualified to prepare applications for patent. Counts 1, 2 and 13, all of which concerned magazine advertisements, were dismissed at the end of the Government's main case. The jury returned verdicts of guilty on all the remaining counts and judgments of conviction were entered thereon against Blasius on December 7, 1967. The court fined the defendant $300 on each of the forty-nine counts. From these judgments Blasius has appealed.[3] We affirm.

---

1. "Whoever, not being recognized to practice before the Patent Office, holds himself out or permits himself to be held out as so recognized, or as being qualified to prepare or prosecute applications for patent, shall be fined not more than $1,000 for each offense."

2. Advertisements: "Patents professionally prepared for maximum commercial value. Patent searches including report $6.00. Patents prepared as low as $195.00. Valuable market services with cash or royalty sales, 10 years dependable service. For free self-protecting record of invention forms write: H. Lawrence Blasius, Patent and Development Engineer, 15 Park Row, New York 38, N. Y."

The letters, one addressed to a Clifford Hamilton of Auburn, New York, and the other to a Mrs. C. M. Glass of Washington, D. C., both contained the following paragraph:

"Patent application may be filed through a registered patent attorney, or if the inventor prefers, he may file his own application showing no attor-

ney of record. When applications are filed by an attorney, the Patent Office directs all communications to the attorney—not to the inventor. If the inventor files his own application direct, the Patent Office will deal directly with him, and the inventor knows at all times the exact status of his application. Should you decide on the later procedure, I would be glad to have the application prepared for you. You would then only have to sign the final application papers and have them forwarded to the Patent Office for filing. These applications are prepared at very reasonable rates and represent a special service which I provide for those of my clients having promising inventions. I employ for this work only graduate engineers who have had considerable experience before the United States Patent Office."

3. Blasius has joined with these appeals, an appeal from his pre-trial motion, denied by Judge Cannella, to dismiss on the ground that the allegations were in-

His principal point on appeal is that as long as he did not hold himself out as *recognized to practice before the Patent Office* he could not be charged with a violation of Title 35 U.S.C. § 33. He asserts that Congress never intended, and that the statute, as written, never contemplated, making it an offense for a person, not so recognized, merely to hold himself out as being qualified to prepare applications for patent. In support of his position he relies upon the recent case of Hull v. United States, 390 F.2d 462 (D.C.Cir. 1968). The defendant in that case had never been, nor had she ever sought to be, recognized to practice before the Patent Office. She gave assistance to applicants for patents but did not hold herself out to be a registered Patent Office practitioner. She was convicted by the trial judge, sitting without a jury, through an interpretation of § 33 which, in effect, held that because she was not recognized to practice before the Patent Office, she was forbidden by § 33 to hold herself out as being fitted or competent to prepare patent applications. The Court of Appeals for the D.C. Circuit found that this was error and remanded for a new trial in the light of its interpretation of § 33, which was that there could be no conviction under the section unless the accused had misrepresented his or her status as a registered practi-

tioner and that there could be no finding of guilt for "the mere rendering of service by one who does not pretend to that status."

It held, however, that the misrepresentation as to status need not be explicit and interpreted the second clause of § 33 to cover speech or behavior or both which implies registration with the Patent Office.[4] In the course of its reasoning the court noted that the Reviser's note to § 33 says that it was based on Title 35 U.S.C. (1946 ed.) § 11a[5] (May 9, 1938 c. 188; 52 Stat. 342) and that " 'the language has been considerably simplified and the upper limit of the penalty is increased.' " It also cited from the legislative history of § 33, pages 6 and 15 of the House Report No. 1923, May 12, 1952, 82nd Congress 2d Sess. and pages 4, 5 and 15 of the Senate Report No. 1979, 82nd Congress 2d Sess. Taking these together it concluded that § 33 was intended to mean exactly what its predecessor § 11a meant, no more and no less, except for the increase in penalty and that therefore the legislative history of § 11a governed the interpretation of § 33. The court recited and analyzed this legislative history in some detail.[6]

In our opinion, however, the provisions of § 33 are perfectly clear. It must be assumed "that the legislative purpose is expressed by the ordinary

---

sufficient to charge an offense under Title 35 U.S.C. § 33. 230 F.Supp. 995 (S. D.N.Y.1964).

4. The court said, " * * * that a fair reading of Section 33 is as follows: Whenever anyone who is not registered with the Patent Office says he is, or, without saying so directly, employs methods which give the impression that he is, he may be criminally punished." 390 F. 2d 462, at 466.

5. "It shall be unlawful for any person who has not been duly recognized to practice before the United States Patent Office in accordance with the provisions of section 11 of this title and the rules of the Patent Office to hold himself out or knowingly permit himself to be held out as a patent solicitor, patent agent, or patent attorney, or otherwise in any manner hold himself out, either directly or

indirectly as authorized to represent applicants for patent in their business before the Patent Office, and it shall be unlawful for any person who has, under the authority of section 11 of this title been disbarred or excluded from practice before the Patent Office, and has not been reinstated, to hold himself out in any manner whatever as entitled to represent or assist persons in the transaction of business before the Patent Office or any division thereof; and any offense against the foregoing provision shall be a misdemeanor and be punished by a fine of not less than $50 and not exceeding $500."

6. Some of the legislative history of § 11a and the present § 33 is discussed in Sperry v. State of Florida ex rel. Florida Bar, 373 U.S. 379, 390 et seq., 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963).

meaning" of words used in the statute. Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). See Green v. King Edward Employees' Federal Credit Union, 373 F.2d 613, 615 (5 Cir. 1967); Heli-Coil Corp. v. Webster, 352 F.2d 156, 167 (3 Cir. 1965); United States v. New England Coal and Coke Co., 318 F.2d 138, 142 (1 Cir. 1963), and where they have a basic and usual sense, they require no resort to legislative history. United States v. Oregon, 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); American Community Builders, Inc. v. Commissioner of Internal Revenue, 301 F.2d 7, 13 (7 Cir. 1962). The proper function of legislative history is to solve and not to create an ambiguity, Railroad Comm. of State of Wisconsin v. Chicago, B. & Q. R. Co., 257 U.S. 563, 589, 42 S.Ct. 232, 66 L.Ed. 371 (1922); Commissioner of Internal Revenue v. Estate of Ridgway, 291 F.2d 257, 260 (3 Cir. 1961); Montgomery Charter Service, Inc. v. Washington Metropolitan Area Transit Commission, 117 U.S.App. D.C. 34, 325 F.2d 230, 233 (1963). Suffice it to say in general that the history of the legislation discloses a continuing effort on the part of Congress for the protection of the public to restrict to those who have met the standards of professional skill and ethics set up by the Patent Office,[7] the rendering of advice and assistance in the presentation and prosecution of applications for patents.

■ It seems to us, from the context in which the word "qualified" is used in the statute, that it carries its primary and more ordinary meaning of possessing particular skill or "know-how" in performing certain tasks or functions[8] rather than the more legalistic meaning, less familiar to the general public, which is having formal legal authority to perform particular tasks or functions, such as an executor who has qualified or one who has become licensed or registered or certified by a governmental body to do certain things.

■ The original draft of § 33 submitted to the Judiciary Committee of the House of Representatives in 1950 provided:

"Whoever, not being recognized to practice, or having been withdrawn or been disbarred or excluded from practice, before the Patent Office, holds himself out or permits himself to be held out as authorized to represent applicants for patent in their business before the Patent Office, shall be fined not more than $500."

See Proposed Revision and Amendment of the Patent Laws, Preliminary Draft with Notes, Committee on the Judiciary, House of Representatives, Jan. 10, 1950. This was rejected. In July of 1950, Representative Bryson submitted H.R. 9133, 81st Cong., 2d Sess. (1950) which read as follows:

"Whoever, not being recognized to practice before the Patent Office holds himself out or permits himself to be held out as so recognized, shall be fined not more than $1,000."

This was also rejected. The third draft submitted by Representative Bryson in April of 1951, H.R. 3760, 82nd Cong., 1st Sess. (1951), was identical to the second draft with the addition of the clause "or as being qualified to prepare or prosecute applications for patent * * *." With this addition the bill was enacted into law as § 33. These changes support the view that the relevant language of the statute was not added accidentally but that the

---

7. The present standards are set out in Title 37 C.F.R. §§ 1.341 and 1.344.

8. Primary dictionary definitions of "qualified" are as follows:
   Webster's Third International Dictionary (1966 ed.):
   "qualified: adj. 1. A. Fitted (as by endowments or accomplishments) for a given purpose: competent, fit."

The Random House Dictionary of the English Language (1966 ed.):
   "1. having the qualities, accomplishments, etc. which fit one for some function, office, or the like. Syn. 1. able, capable, competent, fitted."

effect of this language was intentional. They indicate a concerted legislative attempt to specify precise conduct which it intended to proscribe. It is difficult to imagine why the second clause should have been added if it was intended to mean the same thing as the first clause and was therefore mere surplusage, or at best was an effort to say that holding one's self out may be performed by explicit words or by implication.[9] This appears to be an extremely strained construction, particularly where the plain sense of the second clause is that anyone who is not recognized to practice before the Patent Office is subject to penalty if he holds himself out as professionally competent to prepare or prosecute applications for patent.

The whole purpose of protecting citizens from unskilled and unethical practitioners would be brought to naught if they could advertise and sell their services in preparing patent applications so long as they refrained from stating or implying that they were registered patent agents.

The proper preparation of patent applications calls for a high degree of training and skill both in science and law. The Supreme Court said in Sperry v. State of Florida ex rel. Florida Bar, 373 U.S. 379, 383, 83 S.Ct. 1322, 1325, 10 L.Ed.2d 428 (1963):

"We do not question the determination that under Florida law the preparation and prosecution of patent applications for others constitutes the practice of law. Greenough v. Tax Assessors, 331 U.S. 486 [67 S.Ct. 1400, 91 L.Ed. 1621]; Murdock v. Memphis, 20 Wall. 590 [22 L.Ed. 429]. Such conduct inevitably requires the practitioner to consider and advise his clients as to the patentability of their inventions under the statutory criteria, 35 U.S.C. §§ 101–103, 161, 171, as well as to consider the advisability of relying upon alternative forms of protection which may be available under state law. It also involves his participation in the drafting of the specification and claims of the patent application, 35 U.S.C. § 112, which this Court long ago noted 'constitute[s] one of the most difficult legal instruments to draw with accuracy,' Topliff v. Topliff, 145 U.S. 156, 171, [12 S.Ct. 825, 831, 36 L.Ed. 658.]"

The preclusion of non-recognized practitioners from holding themselves out "as being qualified to prepare * * applications for patent" is no more ambiguous or obscure than the many rules and statutes forbidding the practice of law or medicine by those not licensed to do so. It would be odd, indeed, if a court were to hold that a person not licensed to practice law or medicine could nevertheless lawfully hold himself out as qualified to give skilled professional services for hire in either or both of those fields so long as he did not state or imply that he was licensed to do so.

Sperry v. State of Florida, ex. rel. Florida Bar, supra, points up the effort made by the Commissioner of Patents and the Patent Bar to make the professional and ethical standards, required of Patent Agents in their specialized field, equivalent to those in comparable professions such as law and engineering. See also Title 35 U.S.C. § 31 and Title 37 C.F.R. § 1.341(c). There is no reason for a court to go out of its way to frustrate the operation of a statute, clear on its face, and designed to protect the innocent public from the misrepresentations of unscrupulous and unqualified persons who hold themselves out as competent to prepare patent applications.[10]

---

9. There is a presumption against construing a statute as containing superfluous or meaningless words or giving it a construction that would render it ineffective. Bird v. United States, 187 U.S. 118, 124, 23 S.Ct. 42, 47 L.Ed. 100 (1902); Platt v. Union Pacfic R. Co., 99 U.S. 48, 58,

25 L.Ed. 424 (1878); Green v. King Edward Employees' Federal Credit Union, 373 F.2d 613, 615 (5 Cir. 1967); Tabor v. Ulloa, 323 F.2d 823, 824 (9 Cir. 1963).

10. Hull, the appellant in Hull v. United States, 390 F.2d 462 (D.C.Cir. 1968), appears to have been the subject of liti-

A brief comment, however, on the reasons for disagreeing with the court's interpretation of the legislative history in Hull v. United States, supra, is called for.

The reviser's note says that § 33 was based upon the repealed § 11a, that the language was considerably simplified and the upper limit of the penalty was increased. This was part of a general recodification of the patent laws and no changes of substance were intended. With this in mind the court in *Hull*, having decided that the use of the word "qualified" in § 33 was ambiguous, looked back into the legislative history of § 11a to interpret § 33 and decided that the 75th Congress in enacting § 11a did not intend to strike at and eliminate the evil of the solicitation of business in preparing or prosecuting patent applications for hire by unscrupulous or incompetent persons, not recognized to take care of the business of others before the Patent Office, but rather to prevent the use by unrecognized or unregistered persons, with reference to themselves, of the words "authorized" or "registered" or "recognized" by the Patent Office. It is our conclusion, however, that the 82nd Congress in enacting § 33 proceeded on the assumption that § 11a was intended to eliminate the misrepresentation and fraud perpetrated by many non-registered persons on the innocent public in soliciting patent office business and holding themselves out as possessing the requisite professional skill and integrity to take care of it. It was reasonable for the proponents of § 11a at its passage to have believed that, by forbidding unrecognized practitioners to hold themselves out as patent solicitors, patent agents, or patent attorneys or as authorized to represent applicants for patents before the Patent Office, that they had also forbidden such practitioners to perform the professional functions, practices and duties traditionally carried on by those who were recognized by the Patent Office. After the enactment of § 11a, unrecognized practitioners asserted exemption from § 11a on the ground that it applied only to those unlawfully holding themselves out as so registered, recognized or authorized when they were not, and they continued their solicitation of Patent Office business and the preparation of patent applications. It was in this context that the 82nd Congress changed the wording and formulation of § 11a to enact the new § 33 as part of the process of simplification. A comparison of the two statutes shows that it was a simplification in the interest of clarification.

If it is assumed that § 11a and § 33 were intended to have the same meaning and thrust, then we must look to § 33 to discover what the 82nd Congress, in its recodification endeavor, thought the old § 11a meant rather than the other way around. What Congress in fact clearly did is entitled to a great deal of weight. One thing is the rejection by the Committee of the first two drafts of the proposed § 33 and the adoption by Congress of the draft with addition of the words "or as being qualified to prepare or prosecute applications for patent." Another is the use of the word "qualified" in § 33 in place of the word "authorized" in the first part of § 11a. If the word "authorized" had correctly and fully expressed what the 82nd Congress considered to have been the intent and purpose of the 75th Congress in enacting § 11a, then there was every reason for the 82nd Congress to have used that same word which for 14 years had been the critical part of § 11a. But it did not. Instead it used a word less connotive of a delegation of power by a governmental unit, the usual and ordinary meaning of which would forbid an unregistered or unrecognized person from holding himself out as one competent to render skilled professional services in preparing or prosecuting patent applications. This, in our opinion, accords with the basic

gation in Texas, because of similar activities, see Hull v. Gamblin, 241 A.2d 739 (D.C.App.1968), which deals with a related issue.

purpose of § 11a and § 33 to eradicate the evil practices which had duped and defrauded the public for many years.

In any event, a comparison between our view of the legislative history and that of the *Hull* court demonstrates that the legislative history might fairly be regarded as inconclusive, although we think that it supports our conclusion. We, therefore, rest our opinion primarily on the following factors: The primary meaning of "qualified" is to possess a particular skill; construing the word as appellant suggests makes superfluous its use in § 33; and the protection of prospective patentees from incompetent or unscrupulous individuals would be substantially undermined if the latter could advertise their services and do all the preparation short of signing the application for patent.

The appellant relies upon a portion of Sperry v. State of Florida ex rel. Florida Bar, supra, 373 U.S. at 393, 83 S.Ct., at 1330, in which the Supreme Court said, "Disclosure that persons were falsely holding themselves out to be registered patent practitioners led in 1938 to the enactment of legislation making such misrepresentation a criminal offense" and specifically cited § 11a and § 33. This statement was made in the course of a discussion pointing up that recognition for practice before the Patent Office was not confined to patent lawyers but included patent agents as well, and that duly registered or recognized patent agents could practice their specialized profession in a state without having been first admitted to the bar of that state. It concerned only the first clause of § 33, and at no time did the Court mention the meaning or application of the second clause which is the subject matter of the present case.

The appellant also alleges error on the part of the trial court in refusing to hold a hearing on defendant's charge that the Government was guilty of mail tampering and in denying his motion to dismiss the information for the same reason. That these motions border on

the frivolous is shown from that portion of Judge Pollack's ruling on the motions, which the record supports:

"There is no evidence that the defense of the defendant to the charge was interfered with. The Information was filed many months before the earliest mail incident * * * Defendant's counsel conceded that he had no evidence of interference with mail flowing between the defendant and his lawyer during the pendency of this action and there is no substantial evidence that mail between defendant and an actual witness has been the subject of any impropriety."

We find no merit in this or in the appeal from the motion to dismiss referred to in Footnote 3 or in the other claims made by the appellant. The rulings on the motions and the judgment of conviction are affirmed.