### In re Allen BRUECKNER.

### Appeal No. 80–530.

United States Court of Customs and Patent Appeals.

June 26, 1980.

Robert C. Collins, Detroit, Mich., for appellant.

Alice Daniel, Asst. Atty. Gen., Vito J. DiPietro, Commercial Litigation Branch, Washington, D. C., James E. Denny and Kenneth L. Cage, Washington, D. C., of counsel, for the Department of Energy as amicus curiae.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents and Trademarks; Gerald J. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Judges, and RE, Judge.[*]

MILLER, Judge.

This appeal is from a decision of the Patent and Trademark Office ("PTO")

---

[*] The Honorable Edward D. Re, Chief Judge of the United States Customs Court, sitting by designation.

[1.] In application serial No. 65,756, filed July 13, 1970, and entitled "Fuel Pellets For Controlled Nuclear Fusion."

Board of Appeals ("board") affirming the examiner's rejection of appellant's claims [1] under section 151 of the Atomic Energy Act of 1954, as amended (42 U.S.C. § 2181), on the ground that the claims are to an invention useful solely in the utilization of atomic energy in an atomic weapon. We reverse.

## BACKGROUND

Appellant's invention relates to a fuel pellet configuration used in controlled nuclear fusion systems; also, to a method of increasing the efficiency of a fusion burn of the fuel. Claims 1 and 2 are illustrative:

1. A method of increasing the efficiency of a fusion burn of a small quantity of fusion fuel which comprises:

(a) surrounding the fusion fuel with a contiguous envelope of uranium,

(b) encasing the fuel and the uranium envelope in a contiguous layer of a relatively light material selected from aluminum and beryllium,

(c) directing a laser beam toward said fuel to cause a transfer of fast neutrons from said fuel to said uranium and a fission reaction in said uranium to heat said fuel and maintain a high pressure on said fuel to retard the disassembly of the fusion fuel.

2. A fuel configuration for a fusion burn utilizing a laser beam as an energy source which comprises:

(a) a core of deuterium-tritium having a radius of about 1 millimeter,

(b) a contiguous envelope of uranium around said core, and

(c) a contiguous encasement of relatively light material selected from aluminum and beryllium.

In affirming the examiner's rejection under 42 U.S.C. § 2181,[2] the board said:

---

[2.] 42 U.S.C. § 2181 (section 151 of the Atomic Energy Act of 1954, as amended) reads, in pertinent part, as follows:

(a) Denial of patent; revocation of prior patents

No patent shall hereafter be granted for any invention or discovery which is useful solely in the utilization of special nuclear material or atomic energy in an atomic weap-

Clearly, the invention (the claimed subject matter) is useful solely in the utilization of special nuclear material or atomic energy *in a fuel configuration for laser fusion burn.* If appellant's invented *fuel configuration for laser fusion burn* is an atomic weapon, then 42 U.S.C. 2181 proscribes the granting of a patent on the invention. (Emphasis in original.)

Citing 42 U.S.C. § 2014,[3] the board pointed out that an atomic weapon is "any device utilizing atomic energy . . . *the principal purpose of which* is for use as, or *for development of,* a weapon, a weapon prototype, or a weapon test device." (Board's emphasis.) It added that the examiner had shown that the *"principal use"* of pellets, such as those claimed, is and has been in the development of weapons—a fact not refuted by appellant. The board agreed with the examiner that a nuclear fusion, fuel-containing pellet is, per se, an atomic weapon and sustained the rejection under section 2181.

On reconsideration, the board said that while appellant's various arguments might be compelling when considered only in the context of section 2181 and a layman's understanding of the phrase "atomic weapon," it was bound by the definition in section 2014. It rejected appellant's argument that the invention has dual utility, relying on that section's reference to principal use. It declared that the claimed invention is, by definition, an atomic weapon and that,

"manifestly," section 2181 proscribes the granting of a patent to an atomic weapon.

Appellant argues that the background and legislative history of the 1954 Atomic Energy Act require that the provisions of the act be read narrowly to encourage private participation in the utilization of atomic energy for peaceful purposes; that the board's error in applying section 2181(a) was that it effectively separated the word "solely" from the phrase "in an atomic weapon," contrary to the purpose and intent of Congress; and that where an invention has uses other than in weapons, patent rights are not forbidden by section 2181(a), but are only forbidden by section 2181(b) to the extent that the invention is actually used in the weapons field. Appellant emphasizes that the unclassified status of the present application [4] demonstrates that the invention is not directed to weapons technology; that the evidence of record does not demonstrate that the invention is per se an atomic weapon, and that, at most, the invention has both weapon and nonweapon utility, which is sufficient to avoid application of section 2181(a).

The Department of Energy ("DOE"), in its amicus brief, argues that the board failed to recognize that its application of the special definition of "atomic weapon" in section 2014(d) to "atomic weapon" in section 2181(a) would lead to a result that conflicts with the express scheme devised

---

on. Any patent granted for any such invention or discovery is revoked, and just compensation shall be made therefor.

(b) Denial of rights; revocation of prior rights

No patent hereafter granted shall confer any rights with respect to any invention or discovery to the extent that such invention or discovery is used in the utilization of special nuclear material or atomic energy in atomic weapons. Any rights conferred by any patent heretofore granted for any invention or discovery are revoked to the extent that such invention or discovery is so used, and just compensation shall be made therefor.

**3.** 42 U.S.C. § 2014 (section 11 of the Atomic Energy Act of 1954, as amended) reads, in pertinent part, as follows:

§ 2014. Definitions

The intent of Congress in the definitions as given in this section should be construed from the words or phrases used in the definitions. As used in this chapter:

.    .    .    .

(c) The term "atomic energy" means all forms of energy released in the course of nuclear fission or nuclear transformation.

(d) The term "atomic weapon" means any device utilizing atomic energy, exclusive of the means for transporting or propelling the device (where such means is a separable and divisible part of the device), the principal purpose of which is for use as, or for development of, a weapon, a weapon prototype, or a weapon test device.

**4.** The application was originally classified as restricted data when filed, but was declassified in 1974.

by Congress for the allocation of patent rights in section 2181(b). In DOE's view, the board's interpretation would have the effect of deleting the words "useful solely" from section 2181(a) and substituting "principal purpose" therefor, thereby rendering meaningless the phrase "to the extent" in section 2181(b). DOE points out that the legislative history shows that Congress intended inventions "useful solely" in weapons to not be patentable, while inventions having dual uses would be patentable to the extent of their nonweapon use.

The University of Rochester, in another amicus brief, argues that the policy of the 1954 Act was to permit issuance of patents by removing 1946 Act limitations that precluded all patents which were useful in the production or utilization of atomic energy; that the existence of any utility other than one involving an atomic weapon removes jurisdiction from the PTO to reject a patent application; that authority to determine weapons applications of any invention that may involve atomic energy resides in DOE under 42 U.S.C. § 2162; and, finally, that because neither DOE nor the Department of Defense has made a determination that appellant's application contains restricted data, atomic weapons are not involved, and section 2181 is inapplicable.

The Solicitor argues that the board correctly concluded that the rejection was proper, because the principal purpose of the claimed subject matter is for development of a weapon, a weapon prototype, or a weapon test device; that appellant and amicus DOE ignore the words "principal purpose" in derogation of the preamble of section 2014; that the board's construction of section 2181(a) is not at odds with the operation of section 2181(b); and that appellant has provided no evidence that the "specific invention claimed" serves any purpose—for use in weapon development or in peaceful energy production. It is further argued that the unclassified status of the application does not demonstrate that the invention is not directed to weapon development; that the examiner and board have established a *prima facie* case of what the principal purpose likely was at the time of filing the application—namely, use in development of weapons, weapon prototypes, and weapon test devices; and that appellant has not rebutted that case.

## OPINION

The board recognized that the proper test under section 2181(a) is whether the invention is "useful solely in the utilization of . . . atomic energy in an atomic weapon," and then correctly looked to section 2014(d) for the definition of atomic weapon. However, it erred in then ignoring the word "solely" in section 2181(a) and the complementary provisions in section 2181(b). *United States v. Blasius*, 397 F.2d 203, 207 n.9, 158 USPQ 371, 373 n.9 (2d Cir. 1968), *cert. dismissed*, 393 U.S. 1008, 89 S.Ct. 615, 21 L.Ed.2d 557, 160 USPQ 832 (1969).

Even assuming that appellant's invention meets the definition of "atomic weapon" in section 2014(d), it is necessary to determine whether the invention is "useful *solely* " in an atomic weapon. The record is clear, and the PTO does not argue to the contrary, that appellant's invention has nonweapon utility. Therefore, we hold that the restrictions of section 2181(a) are not applicable.[5]

The examiner suggested that, if the claims recited a "peaceful purpose" limitation, section 2181(a) would not be applicable. However, this ignores the phrase "to the extent" in section 2181(b) and would require that each atomic energy type claim include a boilerplate phrase, such as "used only for peaceful or nonweapon purposes." Such a limitation is already impliedly incorporated into every such claim by section 2181(b).

The decision of the board is *reversed*.

*REVERSED*

5. Unlike the statutory language involved in *Piper v. Atomic Energy Commission*, 502 F.2d 1393, 183 USPQ 235 (Cust. & Pat.App.1974), the meaning of the language involved in this case is clear on its face. Therefore, we need not resort to legislative history. *United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961).