Ann HULL, a/k/a Ann Hastings,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20413.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 12, 1967.

Decided Jan. 23, 1968.

---

4. See Durham v. United States, 94 U.S.App.D.C. 228, 242, 214 F.2d 862, 876.

Cumberland, Washington, D. C., was on the brief, for appellant.

Mr. Lawrence S. Margolis, Sp. Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and David N. Ellenhorn, Asst. U. S. Attys., were on the brief, for appellee.

Mr. G. Franklin Rothwell, Washington, D. C., filed a brief on behalf of the American Patent Law Association as amicus curiae urging affirmance.

Messrs. Sidney S. Sachs, Joseph A. DeGrandi, Frank L. Neuhauser and Donald R. Dunner, Washington, D. C., filed a brief on behalf of the Bar Association of the District of Columbia, urging affirmance.

Before BAZELON, Chief Judge, McGOW-AN and TAMM, Circuit Judges.

McGOWAN, Circuit Judge.

After a trial to the court without a jury, appellant was convicted of violating 35 U.S.C. § 33.[1] After appellant complained in this court of the trial court's failure to make any findings of fact, the Government moved that a remand be made for this purpose. We ordered such a remand; and the record before us now contains a memorandum by the court which it designates as findings of fact under Rule 23(c), FED.R.CRIM.P. We are, however, unable to say, at least with the assurance requisite in a criminal case, that the conclusion of guilt is founded upon a correct construction of the statute. Since we cannot know with certainty what the verdict would have been if the facts found had been viewed in the light of a proper interpretation, a new trial is required.

I

The Congress long ago gave the Commissioner of Patents regulatory powers with respect to according recognition to "agents, attorneys or other persons" who practice before the Patent Office.[2] Ap-

Mr. Donald Cefaratti, Jr., Washington, D. C., with whom Mr. William E.

---

1. "Whoever, not being recognized before the Patent Office, holds himself out or permits himself to be held out as so recognized, or as being qualified to prepare or prosecute applications for patents, shall be fined not more than $1,000 for each offense."

2. The original grant was made in 1922 (42 Stat. 390). The present version (35 U.S.C. § 31) is:

The Commissioner, subject to the approval of the Secretary of Commerce, may prescribe regulations governing the recognition and conduct of agents,

pellant, undisputedly, has neither sought nor been accorded such recognition. She has, however, been engaged for some time in the business of furnishing assistance to applicants for patents. The line she purports to draw is between providing services to applicants who represent themselves, on the one hand, and representing applicants directly, on the other. Her contention is that, so long as she does not hold herself out as being a registered Patent Office practitioner, she does not fall afoul of Section 33.

The Government reads that statute differently. It insists that the prohibition is upon holding oneself out as either (1) registered with the Patent Office or (2) qualified to prepare or prosecute patent applications. The thrust of the Government's position seems to be that no one can hold himself out as qualified to prepare a patent application unless he is registered. Whatever degree of practical wisdom there may be in this formulation, it does not appear to us to be the one that Congress has embraced.

Section 33 is itself a product of a general recodification of the patent laws in 1952. The Revisor's Note says of it only that it is based upon Section 11a of Title 35, which was passed in 1938; and that its effect is limited to the fact that "the language has been considerably simplified and the upper limit of the penalty is increased." This penalty increase was repeatedly characterized as the only substantive change.[3]

The predecessor statute, Section 11a,[4] appears in terms to be addressed to the act of holding oneself out to be a registered practitioner when one is not. The Supreme Court so characterized the statute in Sperry v. State of Florida, 373 U.S. 379, 393, 83 S.Ct. 1322, 1330, 10 L. Ed.2d 428 (1963), where it said that "[D]isclosure that persons were falsely holding themselves out to be registered patent practitioners led in 1938 to the enactment of legislation making such misrepresentation a criminal offense." The legislative events preceding the enactment of Section 11a fully support this description.

The Patent Office, first armed in 1922 with authority to register practitioners, soon found itself confronted with two classes of persons who were functioning in the patent field without registration. One group made no pretense to any legal capacity to represent applicants in Patent Office proceedings, but did assert a technical competence to prepare patent applications in the first instance. The others falsely disseminated the impression that they had been accorded formal recognition by the Patent Office. The Patent Office moved against both groups. In 1924 there was introduced in Congress the first of the so-called Crampton bills, which reappeared five times thereafter through 1932. As its language shows,[5] it made it illegal not only to hold oneself out falsely as registered, but also "to

attorneys, or other persons representing applicants or other parties before the Patent Office * * *.

3. See, e. g., H.R. REP. No. 1923, 82nd Cong., 2d Sess. 6, 15 (1952); S.REP. No. 1979, 82nd Cong., 2d Sess. 4–5, 15 (1952).

4. "It shall be unlawful for any person who has not been duly recognized to practice before the United States Patent Office * * * to hold himself out or knowingly permit himself to be held out as a patent solicitor, patent agent, or patent attorney, or otherwise in any manner hold himself out, either directly or indirectly, as authorized to represent applicants for patent in their business before the Patent Office, and it shall be

unlawful for any person who has * * * been disbarred or excluded from practice before the Patent Office * * * to hold himself out in any manner whatever as entitled to represent or assist persons in the transaction of business before the Patent Office * * *."

5. "It shall be unlawful for any person who has not complied with the rules and regulations of the Commissioner of Patents governing the recognition of agents, attorneys, or other persons representing applicants * * * in the United States Patent Office * * * to hold himself out to be or assume to be a patent agent, patent attorney or counselor with respect to patent applications or in any manner convey the impression

habitually aid or assist" in the preparation of any patent application.

The Crampton bills never passed; and one of the principal attacks made upon them was that they disabled all non-registered persons from providing any services in connection with the preparation of a patent application. When the bill that became the Lanham Act was first introduced in 1935, it did not sweep so broadly, as is clear from the testimony in support of it given by the Commissioner of Patents.[6] The Lanham bill passed in 1937, without committee hearings but with a Senate Committee Report (No. 462, 75th Cong. 1st Sess.) that characterized the bill as "not as sweeping as the familiar Crampton bill often introduced into Congress heretofore." And on the floor of the Senate, the sponsor of the Lanham Act was at pains to assure a leading opponent of the Crampton bills that the new measure fell far short of the latter's prohibition of all work on patent applications by non-registered persons.[7]

We think that Section 33 must be read by the light of these illuminations. The word "qualified," as it appears in that statute, is an ambiguous word at best.[8] The reviser in 1952 could certainly have thought that he was making no change in substance when he substituted it for the word "authorized" in Section 11a. In view of the legislative origins of that word, we believe that Congress has not as yet abandoned its reluctance, manifest in connection with the Crampton bills, to make registration with the Patent Office an essential condition of any and all gainful employment in connection with the

that he * * * has, owns, conducts, or maintains an office of any kind for preparing, prosecuting, or advising with respect to applications for patents, or for compensation to act or practice as a patent agent, patent attorney or counselor with respect to matters before the United States Patent Office, or to habitually aid or assist, directly or indirectly in the preparation, presentation, or prosecution of any patent application. * * * *" H.R. 5760, 68th Congress, 1st Sess. (1952).

6. While testifying before the House Committee on Patents, Commissioner Coe made the following statements:

*Mr. Coe.* The purpose of this bill is to prevent unauthorized practice before the Patent Office. At present, numerous persons who have either been disbarred from practicing before the Patent Office or who have never been enrolled to practice there before, advertise themselves as patent attorneys, solicit patent business, and otherwise engage in the unauthorized practice before the Patent Office. At present, there is no law to control this fraud and deception. * * * The bill is not as sweeping as the familiar Crampton bills often introduced into Congress heretofore. * * *

 * * * * *

*Mr. Coe.* The bill prevents anyone from holding himself out, or permitting himself to be held out, as a patent solicitor, patent agent, or patent attorney, unless he has been duly recognized to practice before the United States Patent Office. It makes it un-lawful, a misdemeanor, and imposes a fine upon any one who practices in violation of this provision.

7. See 81 CONG.REC. 4630 (1937) (remarks of Senator McAdoo).

8. The *trial court defined "qualified"* as meaning "fitted for a given purpose, competent, having complied with specific requirements or precedent conditions for an office or employment." From this the trial court drew the conclusion that the word as used in the statute presented no ambiguity justifying resort to legislative history. But the definition which the trial court employed looks in both directions on the issue before us. One might conceivably be technically "competent" to prepare a patent application without "having complied with the specific requirements" for registration with the Patent Office.

Appellee has called to our attention a recent case in which another trial court found no ambiguity whatsoever in Section 33, and which eventuated in a jury conviction. United States v. Blasius, Inf. 63 Cr. 836, 141 U.S.P.Q. 438 (S.D. N.Y.1964). In this case the defendant had once been a registered practitioner, but had lost that status through misconduct. The operations which he continued despite this disbarment were made the subject of a Section 33 prosecution. In denying a motion to dismiss, the trial court appears to have failed to follow a statutory construction argument like that advanced by appellant here. The case is, however, not on all fours with respect to the facts.

preparation of patent applications. That is a policy which Congress might well adopt as necessary for the protection of the public, but it is not a policy for us to impose by a construction so at variance with the Congressional rejection of that policy thus far.

 We, therefore, are of the view that what Section 33 punishes is misrepresentation as to one's status as a registered practitioner, and not the mere rendering of service by one who does not pretend to that status. We do not, however, think that such pretension need be explicit; and this we take to be the purpose of the second clause. The precursor of that clause in Section 11a appears to us to have been " * * * or otherwise in any manner hold himself out, either directly or indirectly, as authorized to represent applicants for patent in their business before the Patent Office * * *." If, as we suppose, this was what the reviser intended to put into simplified language as the second clause of Section 33, then we conclude that a fair reading of Section 33 is as follows: Whenever anyone who is not registered with the Patent Office says he is, or, without saying so directly, employs methods which give the impression that he is, he may be criminally punished.

### III

From a reading of the transcript of the trial, and bearing in mind the argument made to us in this court, it is plain that the prosecution did not try appellant on the theory that her offense was that of indirect holding out of herself as registered. Neither can we find in the trial court's memorandum after remand any clear indication that it interpreted the statute as do we, and that, in order to convict, it must have found either a direct or indirect misrepresentation as to the existence of registered status. Indeed, the indications are to the contrary, namely, that a course of conduct of preparing applications without being registered in fact was, without more, a violation.

 Even though we might feel that there was evidence in the record which

significantly pointed in the direction of such an indirect misrepresentation, it would not be proper for us to affirm a criminal conviction where the initial trier of the issue of guilt or innocence did not weigh the evidence by that standard. Neither would it be appropriate for us to remand the case for reconsideration by the trial court upon the basis that, if it will re-examine the evidence by reference to a standard upon which the case was neither tried nor decided, the conviction can stand. Under the circumstances, we think a new trial is necessary in which the Government can assemble and present its evidence by reference to the narrower reading of the statute which we think requisite. If this proves unavailing, Congress can be asked once again to address itself to the problems which appellant's activities are thought to create.

The judgment appealed from is reversed, and the case is remanded for a new trial.

It is so ordered.