**YAMETA CO., Ltd., and Jimi Hendrix, also known as Jimmy Hendrix, Plaintiffs,**

**v.**

**CAPITOL RECORDS, INC., PPX Enterprises, Inc., Edward Chalpin and Curtis Knight, Defendants.**

**No. 68 Civ. 220.**

United States District Court
S. D. New York.

Feb. 3, 1968.

Steingarten, Wedeen & Weiss, New York City, for plaintiffs; Henry W. Steingarten, Barry J. Reiss, and Thomas E. Constance, New York City, of counsel.

Halperin, Morris, Granett & Cowan, New York City, for defendant Capitol Records, Inc.; Solomon Granett, New York City, of counsel.

Beldock, Levine & Hoffman, New York City, for defendants PPX Enterprises, Inc. and Edward Chalpin; Elliot L. Hoffman, New York City, of counsel.

METZNER, District Judge.

Plaintiffs Yameta Co. Ltd. (Yameta) and Jimi Hendrix move herein for a preliminary injunction restraining defendants Capitol Records, Inc. (Capitol) and PPX Enterprises, Inc. (PPX) from selling or distributing any recordings featuring plaintiff Hendrix as a performer. They rest their claim for injunctive relief upon general principles of contract law, common-law concepts of unfair competition, New York Civil Rights Law, McKinney's Consol.Laws, c. 6, § 51, and an alleged violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

There is a great deal of factual dispute between the parties, but the undisputed facts are briefly as follows. In July 1965 plaintiff Hendrix, then a little-known singer and guitarist, signed an "exclusive recording artist contract" with Sue Records, Inc. (Sue) by which Hendrix agreed to perform on phonograph records exclusively for Sue for a period of two years. Sue had the option to renew the agreement for additional periods of two years and one year. The Sue contract is a detailed three-page document, setting forth royalty arrangements and specifically giving Sue the right to use Hendrix's name and likeness in connection with the promotion of his records. Hendrix never made any recordings for Sue, but on October 15, 1965 he signed a one-page agreement on the letterhead of defendant PPX, agreeing to "produce and play and/or sing exclusively for PPX" for three years, in return for one per cent of the retail selling price of all records sold. The PPX agreement makes no mention of the right to use Hendrix's name and likeness. Hendrix did participate in recording sessions for PPX in 1965, in which he did not sing, but played the guitar in accompaniment to the singing of defendant Knight, an acquaintance of Hendrix's.

Under circumstances and by virtue of transactions over which there is substantial dispute, Hendrix began to record as a principal artist for plaintiff Yameta in London. Hendrix's records released in the spring and summer of 1967 by various companies under license from Yameta and promoted by Yameta became immediate successes both in England and in this country. Hendrix became a recording artist of wide repute. Then, in December 1967, defendant Capitol, under license from defendant PPX, released an album entitled "Get That Feeling: Jimi Hendrix plays and Curtis Knight sings." It is unclear whether this album contains only selections recorded by Knight and Hendrix in 1965 or also includes some songs from recording sessions held in July and August of 1967, under greatly disputed circumstances. The Capitol album consists only of songs sung by Knight, with guitar accompaniment by Hendrix (and possibly other accompanists). The cover of the album, however, features a photograph of Hendrix alone, in which he appears to be singing. The lettering on the cover consists of three lines, (1) GET THAT FEELING, (2) JIMI HENDRIX plays, (3) AND CURTIS KNIGHT sings. Hendrix's name appears in considerably larger letters than Knight's, and further stands out because of the contrasting colors used in the three lines. The words "plays" and "sings" appear in much smaller type. Furthermore, at least one magazine advertisement for the Capitol album uses only the name of Hendrix in its text and, in depicting the album cover, omits the words "plays" and "sings" thereon. It is plaintiffs' contention that defendants contemplate issuing another such album in the near future.

Plaintiff Yameta alleges that it acquired the exclusive rights to Hendrix's recording services in September of 1966 by written assignment from Sue. It exhibits a written assignment from Sue to one Michael Jeffries, who it says is really Michael Jeffrey, Yameta's agent. Yameta claims that it succeeded to all of Sue's rights with respect to Hendrix and—since the Sue contract was first in time—it, not PPX, has exclusive rights to Hendrix's services. Plaintiffs also contend that the PPX agreement with Hendrix was never intended as an exclusive recording contract, but was merely to secure him as an arranger and "session man" (anonymous background accompanist) for Knight. In any event, they add, the PPX agreement is void due to fraud in the inducement, lack of mutuality, and the prior existence of the Sue contract.

Defendants question whether Yameta possesses, in fact or in law, a valid assignment of the Sue contract. Furthermore, they point out that the Sue agreement by its terms expired on July 27, 1967 and that Yameta has not alleged or demonstrated any exercise of the renewal option. Even if there was a valid transfer of rights to Yameta, defendants contend Yameta's rights to Hendrix's personal services cannot date back to the time of the original Sue agreement. Thus, they argue, the PPX agreement is the first in time as between the opposing parties. They contend that the PPX contract is valid and secures Hendrix's services not merely as a session man—since such anonymous performers are paid per session and are never signed to royalty contracts—but as a principal artist.

■ The foregoing amply illustrates that any determination of the issues of contract law must rest upon resolution of the many factual differences between the parties. Certainly, plaintiffs have not made any clear showing of their probable entitlement to relief, which is their burden in seeking a preliminary injunction. This court has no clear notion of which party has the exclusive right to Hendrix's services, nor can it form such an impression until a trial on the merits. Inasmuch as the claim of unfair competition also rests upon the assumption that Yameta has a valid contractual right to Hendrix's performances, plaintiffs' motion for an injunction based on that cause of action also must fail.

The claims based upon Civil Rights Law § 51 and the Lanham Act present a greater problem. Hendrix himself is entitled to assert a claim for relief under those acts, irrespective of the contractual dispute between PPX and Yameta.

■ Civil Rights Law § 51 grants injunctive relief to "any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent" of such person. Admittedly, Hendrix never specifically consented in writing to the use of his name or likeness by PPX or its assigns. It is also true, as plaintiffs contend, that the New York courts have always applied the requirement of written consent strictly. See, e. g., Durgom v. Columbia Broadcasting System, Inc., 29 Misc.2d 394, 214 N.Y.S.2d 752 (Sup.Ct.1961).

But both parties overlook the additional clause of § 51 which provides that "nothing contained in this act shall be so construed as to prevent any person * * * from using the name, portrait or picture of any author, composer or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait or picture used in connection therewith."

■ That clause has been construed to deny relief to vocal recording artists who had given no written consent, but had knowingly participated in recording sessions. Long v. Decca Records, Inc., 76 N.Y.S.2d 133 (Sup.Ct.1947). Even assuming Hendrix's contract with PPX is invalid vis-a-vis Yameta, it clearly provides for the "disposition" of his "artistic productions." Thus under § 51 Hen-

drix cannot restrain the use of his name and likeness in connection with the performances he rendered for PPX.

Coming now to the claim under the Lanham Act, § 43(a) provides:

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce * * * shall be liable to a civil action * * * by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

■ These provisions grant a right to relief to a broad class of persons. See L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649, 651 (3d Cir. 1954). It is enough that plaintiff "believes that he is or is likely to be damaged" by use of the alleged misrepresentation. Hendrix, who alleges the Capitol album damages his reputation, has standing to seek an injunction against violations of the act.

■ Although § 43(a) was originally given a narrow reading in the courts, it has become apparent in the last decade that its scope is quite extensive. See Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 546 (2d Cir. 1956) (Clark, J., concurring). Examination of the legislative history reveals that this provision was intended to prevent not only false designations as to origin, but to protect consumers and competitors against all forms of misdescription or misrepresentation of products and services in commerce. Furthermore, the evil to be remedied is not limited to the common-law concept of "passing off." See Derenberg, Federal Unfair Competition Law at the End of the First Decade of the Lanham Act: Prologue or Epilogue?, 32 N.Y.U.L.Rev. 1029 (1957). Thus, defendants do not escape liability merely because they are not distributing an album recorded entirely by someone else, but falsely represented as a recording by Hendrix.

■■ Nor does the technically accurate statement on defendants' album jacket that "Jimi Hendrix plays" avoid the coverage of the statute. For one thing, the word "plays" was removed in the magazine advertising for the album referred to above, and it is settled that § 43(a) covers the method by which a product is advertised in addition to the labeling. See L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649 (3d Cir. 1954); Mutation Mink Breeders Ass'n v. Lou Nierenberg Corp., 23 F.R.D. 155 (S.D.N.Y.1959). Moreover, the statutory language is not limited to descriptions and representations which are literally false. If that were so, the clause "including words or other symbols *tending falsely to describe or represent*" would be superfluous. It is sufficient if the defendants' actions tend to create a false impression. Cf. Eastman Kodak Co. v. Royal-Pioneer Paper Box Mfg. Co., 197 F.Supp. 132 (E.D.Pa.1961); Mutation Mink Breeders Ass'n v. Lou Nierenberg Corp., supra, 23 F.R.D. at 161.

■ Do the words and symbols used on the jacket of defendants' album and in the advertising therefor tend falsely to describe its contents? I think that they do. Despite the substantial factual dispute, it is not denied that Hendrix's reputation has been developed as the lead guitarist *and singer* of a three-man group which employs electronic techniques to achieve novel sound effects. Plaintiff's recordings present Hendrix in this capacity, as principal artist. Whether his contribution to the Capitol recording was substantial or was no more than that of a "session man," it is clear that his performance thereon was limited to providing conventional guitar accompaniment to the singing of Curtis Knight and perhaps providing additional guitar "overdubbing" after the original taping. The guitar music clearly serves as background to Knight's vocal performance. Defendants are entitled to accurately reflect Hendrix's contribution to the album.

They are not entitled to use Hendrix's name and picture in the way they have, so as to create the false impression that Hendrix is the principal performer on their album, just as he is on plaintiff's records.

Finally, it is now clear that, in order to secure injunctive relief under § 43(a), the plaintiff need not show that any consumers were *actually* deceived or confused by the alleged misrepresentations or the *actual* diversion of any business. It is sufficient if the plaintiff demonstrates a "likelihood of consumer deception." Hesmer Foods, Inc. v. Campbell Soup Co., 346 F.2d 356, 359 (7th Cir. 1965); Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 649 (3d Cir. 1958). The affidavit of a New York retail record dealer, submitted by plaintiffs, which asserts that the Capitol album has confused and deceived his customers, is a sufficient showing of the likelihood of deception.

Plaintiffs' motion for a preliminary injunction is granted, but only insofar as defendants' album or projected albums have violated or may violate § 43(a).

Settle order.