Robert F. ARNESEN on behalf of himself and all others similarly situated, Plaintiffs,

v.

The RAYMOND LEE ORGANIZATION, INC., et al., Defendants.

No. 71–1520.

United States District Court, C. D. California.

Oct. 15, 1971.

Norman G. Axe, Marvin E. Jacobs, Gerald L. Price, Beverly Hills, Cal., for plaintiffs.

Adams, Duque & Hazeltine, Los Angeles, Cal., for defendants.

## ORDER DENYING MOTION TO DISMISS AND MOTION TO QUASH SUMMONS

DAVID W. WILLIAMS, District Judge.

This is a class action for damages and injunctive relief brought pursuant to the Patent Act, 35 U.S.C. § 33, and the Lanham Act, 15 U.S.C. § 1125(a). This Court has jurisdiction by reason of Title 28 U.S.C. § 1338.

Plaintiff alleges that the Raymond Lee Organization, Inc. is a business which purports to provide a complete service package to inventors, and that it advertises in national publications its service of preparing patent applications for inventors, assists them in technically developing and refining the invention, aids in the preparation of patent drawings and descriptions to establish a "Patent Pending" status for the invention, all for a fixed fee plus 10% interest in the invention. Defendant's advertisement suggests that it further assists the inventor by preparing a sales letter and prospectus for him and in aiding the introduction of the invention to industry. Its promotional material disclaims that it is a registered patent attorney or agent, but indicates that its services are so complete that no other outside services are needed by the inventor.

Defendants have moved pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted, and individual defendants Raymond Lee, Lawrence Peska and Howard D. Gressey further move to quash service of summons upon them on the grounds that the Court lacks personal jurisdiction over them.

### THE PATENT ACT CLAIM

Section 33 of Title 35 of United States Code provides that,

"Whoever, not being recognized to practice before the Patent Office, holds himself out or permits himself to be held out as so recognized, or as being qualified to prepare or prosecute applications for patent, shall be fined not more than $1,000 for each offense."

Defendants call attention to the fact that Section 33 is a penal statute and they argue that no private right of

action arises thereunder and that even if there were a private right of action, defendants have engaged in no activity which constitutes a breach of the statute. It is well-settled law that "though Congress has not created a statutory right of action * * * it is still possible for the courts to do so on the principles of the common law. The breach of a penal statute may be regarded by the courts as an operative fact upon the basis of which may be predicated a common law tort liability to a person injured as a result of the breach, provided he is within the class for whose protection the penal statute presumably was passed." Jacobson v. New York, N. H. & H. R. Co., 206 F.2d 153, 156 (1st Cir., 1953). This was but a restatement of the statutory tort doctrine first enunciated in the case of Couch v. Steel, 2 E. & B. 402, 118 Eng.Rep. 1193 (Q.B.1854), and recognized by the Supreme Court in Texas & Pacific Railway v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). In *Rigsby*, the Court noted that the doctrine was an application of the maxim Ubi jus, Ibi Remedium. Recently the Supreme Court has urged all federal courts to adjust their remedies to violations of federal rights. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Accordingly, wherever consistent with the intent of the statute, courts have construed an implied right of action. See, *e. g.*, Kardon v. National Gypsum, 69 F.Supp. 512 (E.D.Pa.1946); Reitmeister v. Reitmeister, 162 F.2d 691 (2nd Cir., 1947); Fagot v. Flintkote, 305 F.Supp. 407 (E.D.La.1969).

■■ It is consistent with the purposes of Section 33 to construe an implied right of action if plaintiff is within the class for whose protection the statute was enacted. Chapter 3 of Title 35 regulates practice before the Patent Office. It is beyond question that that office can establish rules and regulations for practice before it which are neither subject to nor subordinate to the rules of practice of the individual states. Sperry v. Florida, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). It follows that the Patent Office also has the power to establish criteria for practice as well as rules for disbarment and that it has plenary authority to regulate the patent bar. Addressing himself to the predecessor statute to the one here in issue, Commissioner Coe of the Patent Office told The House Committee on Patents that "the purpose of this bill is to prevent unauthorized practice before the Patent Office. At present, numerous persons * * * solicit patent business and otherwise engage in the unauthorized practice before the Patent Office."[1] The remarks of Commissioner Coe and the plain language of both the prior law, 52 Stat. 342, and the current law, Chapter 3, Title 35, have, as their object, the establishment of high standards of professional competence in the patent bar.

■ The Court in Hull v. United States, 129 U.S.App.D.C. 47, 390 F.2d 462 (D.C.Cir.1968) was of the opinion that the setting of high standards and high penalties for holding oneself to be qualified when one is not, acted simply as a deterrent to unauthorized patent practice. Judge Anderson in United States v. Blasius, 397 F.2d 203 (2nd Cir., 1968) saw the deterrent effect as being but one side to the coin. The other side was protection of the inventor. Indeed it is difficult to distinguish between the setting of a standard and the benefit to be accorded inventors; the reason for the standard is to accord some measure of protection to the inventor population, otherwise the high standard would be academic. See Fitzgerald v. Pan American World Airways, 229 F.2d 499 (2nd Cir. 1956). This Court concludes that inventors are within the class for whose protection the statute was enacted.

■ The defendant contends that he never held himself out as being "quali-

---

1. Cited in Hull v. United States, 129 U.S.App.D.C. 47, 390 F.2d 462, 465, n. 7 (1968).

fied" to prepare or process patent applications as that term is used in Section 33 of the Patent Act. Defendant would adopt the definition of "qualified" found in *Hull, supra* at 466, that "(w)henever anyone who is not registered with the Patent Office says he is, or, without saying so directly, employs methods which give the impression that he is, he may be criminally punished." However, a later case [2] construed "qualified" to mean "possessing particular skill or 'know-how' in performing certain tasks and functions rather than the more legalistic meaning, less familiar to the general public, which is having formal legal authority to perform particular tasks or functions."

Though the history of the Act does not illumine the meaning to be given the word "qualified", the revision of the statute in 1952 gives some assistance. The prior Act, 35 U.S.C. § 11a, 52 Stat. 342, specified that among those who engaged in "unauthorized" practice were those excluded from practice and who had not been reinstated. While this category of person is not specifically included in the current act, it is clear from the reviser's note that the language of the prior Act was merely simplified. This *suggests* that a former patent attorney bears a heavier burden of showing that he did not hold himself out as being qualified than one who was never a patent agent or attorney.

The facts indicate that Raymond Lee did not, in effect, state that he was a registered patent attorney. However, his course of conduct virtually negates his statement that he is not registered. His credentials, imprinted on his stationery, state that he was a former patent attorney as well as a patent examiner for the Patent Office. The introductory letter he sent to plaintiff suggests that if one uses his services, one need not employ counsel nor other outside specialists to process the patent application. In short, the service promised was but one step short of filing the application with the Patent Office and it included the preparation of technical drawings and definitive text. It is difficult to imagine how high standards of professional competence can be maintained if a former patent attorney can advertise and engage in these activities and still not be considered as holding himself out as "qualified" to process patent applications.

"The whole purpose of protecting citizens from unskilled and unethical practitioners would be brought to naught if they could advertise and sell their service in preparing patent applications so long as they refrained from stating or implying that they were registered patent agents." *Blasius, supra,* at 207.

The motion to dismiss for failure to state a claim upon which relief can be granted is denied.

## THE LANHAM ACT CLAIM

Defendant argues that Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), confers no private right of action on a defrauded consumer but only on competitors because the intent of the act is to "protect persons engaged in commerce." That section says in pertinent part:

"(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, *or any false description or representation, including words or other symbols tending falsely to describe or represent the same * * ** shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false de-

---

2. United States v. Blasius, *supra*, at 206.

scription or representation." (emphasis added).

The liability clause of Section 43(a) is clear on its face; it applies to any person who is or is likely to be damaged. Defendant would have us construe against the plain language of the statute. Since the liability clause also mentions "any person doing business" it would be plausible to apply the *ejusdem generis* rules and thus construe the subsequent use of the words "any person" to mean any person doing business or any competitor. If the purpose of the Lanham Act were solely to protect competitors this construction would be sound. 3 J. Sutherland, Statutes and Statutory Construction, Section 5901, (3rd Ed. F. Horack, Jr. 1943). However, the plain language of the intent section, 15 U.S.C. § 1127, makes actionable, *inter alia*, the deceptive and misleading use of marks and descriptions. Since that same section defines "person" as both natural and juristic persons, this Court cannot conclude that competitors were the only persons protected by the Act. See, L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649, 651 (3rd Cir., 1954).

In Yameta v. Capitol Records, Inc., 279 F.Supp. 582 (S.D.N.Y.1968), inj. vac. and remanded for hearing, 393 F.2d 91 (2d Cir. 1968), the Court found that the legislative history of the Lanham Act indicates that it was meant to protect both "consumers and competitors." 279 F.Supp. 582, 586. This illumines other court decisions which conclude that the Lanham Act is remedial in nature. See, *e. g.*, Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538 (2d Cir. 1956) (Judge Clark Concurring); Geisel v. Poynter Products, Inc., 283 F.Supp. 261 (S.D.N.Y.1968).

Defendants urge that the Federal Trade Commission can protect the interests of the public. Nothing in the Lanham Act requires the Federal Trade Commission to be the sole agent for consumers. As long as the consumer is within the class to be protected by the Act, there is, absent legislative intent to the contrary, no reason why he should not be able to sue for his own protection, and to recover damages. RESTATEMENT (SECOND) TORTS, § 286 (1965); *See also*, Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

The misrepresentations made actionable by the Lanham Act are misrepresentations as to the nature of the product or the service to be rendered. In Gold Seal Co. v. Weeks, D.C., 129 F.Supp. 928 (aff'd, 97 U.S.App.D.C. 282, 230 F.2d 832 (1955), a manufacturer who marketed glass cleaner and polish, which included no wax, under the name "Glass Wax" was held civilly liable to his competitor under the Lanham Act. In the case at bar, the nature of the service to be rendered appears plain, though the defendant's legal qualifications may be in dispute. Plaintiff's complaint relates more to the course of defendant's business conduct than to the lack of resources at defendant's command. Internal business practice is not a proper subject of a Lanham Act claim. Since on a motion to dismiss, however, we accept the plaintiff's allegations as true, a prima facie case for a Lanham Act violation has been alleged.

The motion to dismiss for failure to state a claim upon which relief can be granted is denied.

### MOTION TO QUASH SERVICE ON INDIVIDUAL DEFENDANTS

Defendants, Raymond Lee, Lawrence Peska and Howard Gressey have further moved this Court to quash service of summons upon them and to dismiss the case as to them upon the ground that they were outside the jurisdiction of this Court when served and that the Court has no jurisdiction over their persons and that it would cause great inconvenience to them to cause them to have to defend in this tribunal. Under the circumstances of this service, this Court would only have jurisdiction over the persons of these individuals if authority can be grounded in the long-

arm statute of the State of California, to wit: Section 410.10 of the California Code of Civil Procedure. There must be shown that a non-resident defendant has had certain minimum contacts with this state so that his inclusion in the suit does not offend "traditional notions of fair play and substantial justice". International Shoe Company v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

The three individuals have each had some part in bringing about a business relationship between the Raymond Lee Organization and plaintiff. Defendant, Raymond Lee engaged in widespread advertising in California newspapers in his individual and not his corporate name. He solicits and receives considerable business from persons within the State of California and his organization has offices in this state. Defendant, Peska has made many trips to California for the purpose of aiding inventors in the patent service that the Raymond Lee Organization provides. Plaintiff alleges that he has transacted all business in California with the defendant Peska. Defendant, Howard Gressey is alleged to have engaged in a course of conduct to compel reluctant or disillusioned inventors, including those in California, to live up to their contracts. While there is no evidence that Gressey was physically present in this state, there is evidence that he has conducted communications with inventors in this state who do business with the Lee Organization in an effort to keep alive the business relationship between the inventor and the Lee Organization. Each of these three individuals would be expected to be a witness for the corporate defendant at the trial in this state and each is represented by the same counsel representing the corporate defendant. It is the trend of the law to liberalize the concept of personal jurisdiction where there are no over-riding injustices or inconveniences to be reckoned with, so that all persons involved in the transaction complained of may be present in one court and all issues complained of may be resolved in

one case, RESTATEMENT (SECOND) JUDGMENTS § 36, Comment e (1965). There seems ample justification for the inclusion of these three individuals as defendants in this case and their motion to quash is denied.