In re AMALGAMATED DEVELOPMENT CO., INC., t/a Washington Patent Office Research Bureau and H. Lawrence Blasius, Petitioners.

No. 10907.

District of Columbia Court of Appeals.

Submitted March 15, 1977.

Decided June 20, 1977.

---

Harry Grossman, Washington, D. C., for petitioners.

Edgar T. Bellinger, Washington, D. C., Chairman, Committee on Unauthorized Practice of Law.

Before KELLY, GALLAGHER and MACK, Associate Judges.

KELLY, Associate Judge:

H. Lawrence Blasius and Amalgamated Development Co., Inc., here seek review of an order enjoining them from practicing law in the District of Columbia after a hearing in which the following facts were found.[1]

Petitioner Blasius is the principal owner and operator of Amalgamated Development Co., Inc., trading as the Washington Patent Office Search Bureau, a District of Columbia corporation.[2] He is not, nor does he hold himself out to be, a member of the District of Columbia bar or licensed to practice before the United States Patent Office.

Petitioner places advertisements in such publication as Popular Science Magazine offering to conduct patentability searches for and to advise inventors on patent matters. When a response to an advertisement is received, petitioner initially writes the inventor describing the procedure for conducting a patentability search, and advising the inventor to have the application for such a search witnessed by a friend to prove that he is the "first and true inventor." The letter warns an inventor not to attempt to market his ideas until he has an application pending in the Patent Office.

When the inventor sends in a "disclosure" of his invention, petitioner conducts a patentability search in the Patent Office. Copies of the prior art revealed by the search are sent to the inventor and an opinion on

1. The present proceeding began with a petition to this court filed by the Committee on Unauthorized Practice under D.C.App.R. 46 II(b)(8). This committee was established by Rule 46 II(a) by the court, which was promulgated pursuant to D.C.Code 1973, §§ 11–2501, –2504. The chief judge of the court issued two orders: one designating an associate appellate judge to act as a hearing judge and the second ordering respondents to show cause why they should not be adjudged in contempt of court and/or permanently enjoined from the challenged activities. After making the findings enumerated above, an injunction issued.

2. For the sake of clarity, we refer to petitioners in the singular.

patentability is offered.[3] If petitioner concludes that the idea is not patentable, the client is so advised and it is recommended that no more money be spent developing the inventor's idea. If in the petitioner's opinion the idea appears patentable, it is recommended that a patent be applied for and assistance is offered the client in preparing the application. If the inventor agrees to enlist the services of petitioner, the application, oath, and formal drawings are prepared and sent to the inventor with instructions to file them in the Patent Office pro se together with the $65.00 filing fee. The Patent Office communicates directly with the inventor in all further correspondence.

If the application is rejected, as it usually is at least once, petitioner assists the client in amending the specification and claim to overcome Patent Office objections. When and if the application is finally rejected, petitioner recommends that the client file another amendment rather than an appeal and again offers to assist in preparing the amendment. Petitioner is paid for his services.

It is argued in this petition for review that jurisdiction over any question related to the practice of patent law is vested exclusively in the Commissioner of Patents and that, in any event, the enjoined activities do not constitute the practice of law.

## I.

█ Any person may deal directly with the Patent Office in his own behalf in prosecuting an application for letters patent. 37 C.F.R. § 1.31 (1976).[4] To represent another before the Commissioner of Patents, however, the requirements set out in the regulations established by the Commissioner pursuant to 35 U.S.C. § 31 (Supp. V

1975), i. e., 37 C.F.R. §§ 1.341, –.342 (1976), must be met. Two categories of persons are licensed to practice before the Patent Office—patent attorneys (§ 1.341(a)) and patent agents (§ 1.341(b)). The only difference between the two is that patent agents are not also attorneys. Both must otherwise meet the same requirements, and once registered have the same scope of authority.[5] The fact that one is an attorney does not of itself qualify one to practice patent law.

As we shall discuss, *infra,* much of the activity engaged in by a patent agent/attorney (and by petitioner) concerns the practice of law. *Sperry v. State of Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963); *In re Cowgill,* 37 Ohio App.2d 121, 307 N.E.2d 919 (1973). Thus, many nonlawyer/patent agents are actually practicing law in the state where they are situated. Such practice is unauthorized by state bar associations which have in the past attempted to curtail it, but the Supreme Court has resolved the conflict between the federal license to practice before the Patent Office and state regulations limiting the practice of law to attorneys in *Sperry v. State of Florida, supra.* The Court, in a unanimous opinion, based its decision on the Supremacy Clause, U.S. Const. art. 6, stating:

> The statute [35 U.S.C. § 31 (1952)] thus expressly permits the Commissioner to authorize practice before the Patent Office by nonlawyers, and the Commissioner has explicitly granted such authority. If the authorization is unqualified, then, by virtue of the Supremacy Clause, Florida may not deny to those failing to meet its own qualifications the right to perform the functions within the scope of the federal authority. A State may not enforce licensing requirements which, though val-

---

**3.** Whether an invention is patentable depends upon whether it meets the statutory criteria set forth in 35 U.S.C. §§ 101–103 (1970 & Supp. V 1975), *viz.,* among other things, whether it is novel, useful, and unobvious.

**4.** The Rules of Practice, which are regulations promulgated by the Commissioner of Patents pursuant to statutory authority, have the force

and effect of law. *Application of Rubinfield,* 270 F.2d 391, 123 USPQ 210 (1959), *cert. denied,* 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960).

**5.** In fact, before 1938 all registrants were registered as attorneys whether they were attorneys at law or not. 37 C.F.R. § 1.341(i) Note (1954).

id in the absence of federal regulation, give "the State's licensing board a virtual power of review over the federal determination" that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress. "No State law can hinder or obstruct the free use of a license granted under an act of Congress." . . . [*Id.* at 385, 83 S.Ct. at 1326 (footnotes omitted).]

Thus, the State of Florida could not prevent a nonattorney who was a licensed patent agent from conducting his practice before the Patent Office in Florida. The obvious corollary of this principle is that if the federal government has *not* granted a license in this area, a state is free to enforce its own licensing regulations.[6]

Our case is identical with *In re Cowgill, .supra,* where the practitioner was neither registered to practice before the Patent Office nor a member of the bar. The Ohio Court of Appeals held that the state was free to proceed against him for the unauthorized practice of law,[7] stating:

There is no federal purpose to protect those whom it [the federal government] does *not* license from further regulation by the state. The objective is to protect the right to practice before the U.S. Patent Office from restraint by the states. [*Id.,* 37 Ohio App.2d at 124, 307 N.E.2d at 922.]

If petitioner Blasius were a registered patent agent/attorney, he would be correct, under *Sperry,* in saying that the District of Columbia Committee on Unauthorized Practice has no power to forbid his activities. But he is not so registered,[8] as he freely concedes; therefore *Sperry* does not apply. And when a petitioner is not registered in the Patent Office a state does not interfere with any federal purpose in subjecting the practitioner to its own licensing regulations and is free to do so.

Petitioner argues, however, that because only the Commissioner has the power to authorize practice before the Patent Office *only* the Commissioner can determine what constitutes unauthorized practice and take action against it.

It is undisputed that the Commissioner has jurisdiction over persons, registered or not, who hold themselves out as qualified to prepare or prosecute patent applications. Proceedings to suspend, disbar, or exclude a registrant from practice are before the Commissioner. 37 C.F.R. § 1.348 (1976). The Commissioner can also criminally prosecute nonregistrants under 35 U.S.C. § 33 (Supp. V 1975), which provides:

Whoever, not being recognized to practice before the Patent and Trademark Office, holds himself out or permits himself to be held out as so recognized, or as being qualified to prepare or prosecute applications for patent, shall be fined not more than $1,000 for each offense.

Nevertheless, there is no authority for petitioner's argument that because the Commissioner can punish unauthorized practice before the Patent Office, a state is precluded from concurrently preventing the unauthorized practice of *law.* No case cited by petitioner is on point. In *Battelle Memorial Institute v. Green,* 93 Ohio Law Abs.

---

**6.** The Supremacy Clause protects only those activities of registrants "necessary for the accomplishment of the federal objectives." *Sperry v. State of Florida, supra,* 373 U.S. at 402, 83 S.Ct. at 1335.

**7.** It is well settled that the state has a valid interest in preventing nonlawyers from engaging in the practice of law. *Konigsberg v. State Bar of California,* 366 U.S. 36, 40–41, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961).

**8.** Apparently Blasius became a Registered Patent Agent in 1950. Unfortunately he persisted

in soliciting business through advertising, even after a regulation was passed in 1959 prohibiting advertising by registered patent agents/attorneys. (37 C.F.R. § 1.345 (1976)) As a consequence, he was excluded from practice before the Patent Office in 1961, *In re Blasius,* 138 USPQ 482 (Comr. Pats. 1961), and has since that time been engaged in the business described above. *United States v. Blasius,* 397 F.2d 203, 204 (2d Cir.), *cert. granted,* 393 U.S. 950, 89 S.Ct. 375, 21 L.Ed.2d 361 (1968), *cert. dismissed,* 393 U.S. 1008, 89 S.Ct. 615, 21 L.Ed.2d 577 (1969).

516, 29 Ohio Op.2d 388 (1962), the practitioner was a registered patent agent, whereas petitioner is not. *Silverman v. State Bar of Texas,* 405 F.2d 410 (5th Cir. 1968), holds that a state bar regulation prohibiting a registered patent attorney from being listed both as a general attorney and a patent attorney unduly interfered with the Patent Office's interest in having its licensees make their specialty known and was thus invalid under *Sperry.* Both *Enders v. American Patent Search Company,*[9] 535 F.2d 1085 (9th Cir.), *cert. denied,* 429 U.S. 488, 97 S.Ct. 242, 50 L.Ed.2d 170 (1976), and *Arnesen v. Raymond Lee Organization, Inc.,* 333 F.Supp. 116 (C.D.Cal.1971), were prosecutions under 35 U.S.C. § 33 and there was no discussion in either opinion of simultaneous proceedings under state law.[10]

The subject was discussed in *In re Cowgill, supra,* 37 Ohio App.2d at 124, 307 N.E.2d at 922, however, where the court said:

> Some claim is made that the federal government has preempted the regulation of those *not* admitted to practice before the Patent Office by the passage of Section 33, Title 35 U.S.Code, which makes it a criminal offense for a person not so registered to hold himself out, or permits himself to be held out as so recognized, or as being qualified to prepare or prosecute applications for patent. However, the action of a state in forbidding the acts here injoined neither prevents a federal prosecution under this section, nor impedes the federal government from acting against those who, *besides* engaging in the practice of law, violates this statute. The action of the state is at the most parallel to the federal action and not in opposition to it. [Emphasis in original.]

We are thus of the opinion that regardless of any action taken by the Commissioner of Patents under § 33, this court has jurisdiction to review and enjoin petitioner's activities.

## II.

Petitioner also argues, citing *Hull v. United States,* 129 U.S.App.D.C. 47, 390 F.2d 462 (1968), that the challenged activities do not constitute the practice of law. As the hearing judge noted, however, the *Hull* case is irrelevant to the proceeding before the court.

In *Hull,* there was a criminal prosecution under 35 U.S.C. § 33, and while it was not stated in the opinion whether or not defendant Hull was a member of the bar, she was not registered in the Patent Office. The issue in the case was the interpretation of the word "qualified" in § 33; *i. e.,* whether it means (a) possessing particular skill or know-how in performing certain functions or tasks or (b) having formal legal authority to do those tasks, *i. e.,* registered to practice before the Patent Office. The court decided that it meant the latter, whether such holding out is explicit or implied.[11] It said that § 33 was intended to punish "misrepresentation as to one's status as a registered practitioner, and not the mere rendering of service by one who does not pretend to that status." *Id.,* 129 U.S. App.D.C. at 51, 390 F.2d at 466. The section was not meant to prevent any and all "gainful employment in connection with the preparation of patent applications." *Id.*

Petitioner appears to argue that his activities are not proscribed by § 33, under *Hull,* because he does not hold himself out to be registered to practice before the Patent Office and therefore is not engaged in the practice of law. Even assuming that peti-

---

**9.** One of the defendants in *Enders* was Harold Lawrence Blasius.

**10.** The two cases are significant, however, in that they establish a private right of action under 35 U.S.C. § 33 (Supp. V 1975), a fact which further undermines petitioner's theory of exclusive jurisdiction in the Commissioner of Patents.

**11.** The court paraphrased § 33 as follows:

> Whenever anyone who is not registered with the Patent Office says he is, or, without saying so directly, employs methods which give the impression that he is, he may be criminally punished. [*Id.,* 129 U.S.App.D.C. at 51, 390 F.2d at 466.]

tioner has not violated § 33, we fail to see how this fact could lead to the conclusion that he is not practicing law. *Hull* says nothing whatever about whether acts found to violate § 33 are also considered the practice of law there being no discussion at all concerning the relationship between the practice of law and practice before the Patent Office. Thus petitioner cannot seriously argue that *Hull* in any way supports the contention that he is not practicing law.[12]

On the contrary, it has been held that activities such as petitioner's constitute the practice of law, *e. g.*, advising inventors as to patentability under 35 U.S.C. §§ 101–103 (1970 & Supp. V 1975), based on the results of the search; preparing the patent application including the specification claims, 35 U.S.C. § 112 (Supp. V 1975), and official drawings, 35 U.S.C. § 113 (Supp. V 1975); advising of what action to take after rejection, including after final rejection; and preparing and filing amendments. *Sperry v. State of Florida, supra,* 373 U.S. 379 at 383, 83 S.Ct. 1322; *In re Cowgill, supra,* 37 Ohio App.2d at 122, 307 N.E.2d at 920. Because petitioner does not sign any correspondence with the Patent Office and disclaims that he and his organization are patent attorneys does not remove these efforts from the realm of the practice of law.

We are of the opinion that this court and its Committee on Unauthorized Practice have jurisdiction over petitioner's conduct notwithstanding the Commissioner of Patents' concurrent jurisdiction and, additionally, that the findings of fact of the hearing judge are amply supported by the record and his conclusions of law are correct. Accordingly, the order enjoining petitioners from continuing the unauthorized practice of law is

*Affirmed.*

12. Furthermore, the validity of the *Hull* decision is questionable. In *United States v. Blasius, supra,* the Second Circuit rejected the *Hull* interpretation of § 33. Instead it held that "qualified" "carries its primary and more ordinary meaning of possessing particular skill or 'know-how' in performing certain tasks or functions . . .." *Id.* at 206. This seems more consistent with the legislative intent to protect inventors by setting a high standard of professional competence for the patent bar (which includes patent agents). *Arnesen v. Raymond Lee Organization, Inc., supra* at 118.

Because of the conflict the Supreme Court granted certiorari in the *Blasius* case to decide whether (1) the *Blasius* court erred in holding that, contrary to *Hull*, the language in § 33 was clear and not ambiguous; and (2) whether the word "qualified" means skill, or formal legal authority from the Patent Office to engage in patent practice. Certiorari was dismissed voluntarily by the parties under Rule 60 of the Supreme Court Rules.