Placide N. LeBLANC, on behalf of himself and all others similarly situated

v.

George SPECTOR.
Civ. No. 14941.

United States District Court,
D. Connecticut.
Nov. 30, 1973.

David S. Fishman, East Hartford, Conn., for plaintiff.

Lewis B. Stackell, New York City, Karl Fleischmann, Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS

BLUMENFELD, Chief Judge.

Plaintiff has alleged that defendant held himself out to plaintiff as qualified to advise and assist plaintiff in the preparation and presentation to the Patent Office of plaintiff's application for a patent on his invention, a magnetic sash lock. Plaintiff further alleges that he paid a total of $960 to defendant for his services, and that defendant, while holding himself out as qualified to perform the services rendered to plaintiff, had in fact been disbarred and excluded from practice before the Patent Office prior to his dealings with plaintiff. While plaintiff does not claim that his application for a patent was prejudiced by defendant's alleged misrepresentations as to his qualifications, plaintiff does claim that he personally has suffered $1,000 in damages, a figure apparently based on his payments to defendant.

Plaintiff asserts that the above allegations give rise to three causes of action against defendant, and brings suit on each cause of action on behalf of a class of persons similarly situated, i. e., the class of persons who have engaged defendant's services in reliance on his representations as to his being qualified to assist in the preparation of patents. Plaintiff seeks injunctive relief and also "demands judgment and damages against defendant in the amount of $10,000.00 for himself and for each member of the class hereinafter determined, which amount shall include compensatory and exemplary damages, together with costs, disbursements, attorneys' fees as set forth in 35 U.S.C. § 285, and interest, all as permitted by law."

What plaintiff terms three different causes of action are actually three different remedies for a single cause of action—the course of allegedly wrongful conduct set forth above. Plaintiff's first "cause of action" pursues a quasi-statutory remedy, to wit, the civil remedy which plaintiff contends is implied in a federal penal statute forbidding persons not authorized to practice before the Patent Office from representing themselves as qualified to prepare patent applications. 35 U.S.C. § 33. Plaintiff's second "cause of action" seeks recovery under the Lanham Act, 15 U.S.C. § 1125(a). In addition to the money damages noted above, plaintiff seeks by his first two "causes of action" to have defendant enjoined from further violations of 35 U.S.C. § 33 and 15 U.S.C. § 1125(a). Plaintiff's final "cause of action" seeks damages only, and states a common-law tort claim of fraudulent misrepresentation. Defendant has moved for dismissal of plaintiff's entire complaint, contending that this Court lacks jurisdiction over any of plaintiff's asserted "causes of action."

### Plaintiff Lacks Standing Under Lanham Act

Plaintiff's second "cause of action," the Lanham Act claim, may be disposed of easily. Plaintiff has conceded that Colligan v. Activities Club of New York, 442 F.2d 686 (2d Cir. 1971), cert. denied, 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971), squarely controls this claim, adversely to plaintiff's interests. Colligan held that the Act created "a special and limited unfair competition remedy" and conferred no rights on consumers as opposed to competitors. 442 F.2d at 692. "The Act's purpose . . . is exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct." Ibid. Plaintiff has thus failed to state a claim upon which relief can be granted under the Lanham Act, and his

second "cause of action" is accordingly ordered dismissed.

### Diversity Claim Challenged Re Jurisdictional Amount

More troublesome is plaintiff's third "cause of action." Plaintiff has alleged that this Court has diversity jurisdiction over this tort claim under 28 U.S.C. § 1332(a).[1] While the requisite diversity of citizenship is not disputed, the parties have argued vigorously whether plaintiff's prayer for damages suffices to place in controversy the jurisdictional amount. It is undisputed that these damages must be determined according to Connecticut law.

■ Plaintiff has claimed only $1,000 in general damages and has conceded that the jurisdictional amount cannot be obtained by an aggregation of the claims of the class he purports to represent. Snyder v. Harris, 394 U.S. 332, 336–337, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); Givens v. W. T. Grant Co., 457 F.2d 612, 614 n. 4 (2d Cir. 1972), vacated and remanded on other grounds, 409 U.S. 56, 93 S.Ct. 451, 34 L.Ed.2d 266 (1972). Plaintiff insists instead that his claim of exemplary damages suffices to make up the difference between his alleged $1,000 actual damages and his $10,000 prayer.

Defendant does not dispute the established rule that "Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining the jurisdictional amount. Therefore even though the petitioner is limited to actual damages of $1,000 . . . the question remains whether it is apparent to a legal certainty from the complaint that he could not recover, in addition, sufficient punitive damages to make up the requisite [jurisdictional amount]." Bell

v. Preferred Life Society, 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943). This rule as to punitive damages is but an application of the more general rule that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

### Legal Certainty Argument

■ Without expressly questioning plaintiff's good faith, defendant has attempted to win dismissal under the "legal certainty" standard. Defendant relies on Connecticut law limiting exemplary damages in tort actions to "the amount of the expenses of litigation in the suit, less taxable costs." Collens v. New Canaan Water Co., 155 Conn. 477, 488, 234 A.2d 825, 831 (1967); Givens v. W. T. Grant Co., supra, 457 F.2d at 614. Moreover, Connecticut law demands that an award of punitive damages be based on evidence and not mere speculation. Chykirda v. Yanush, 131 Conn. 565, 567–569, 41 A.2d 449 (1945). Thus the term "punitive" is a misnomer, as "punitive" damages in Connecticut serve a compensatory function limited by plaintiff's actual costs, rather than a punitive function which computes damages in terms of the wantonness of defendant's conduct. See Collens v. New Canaan Water Co., supra, 155 Conn. at 488. Defendant accordingly asserts that Connecticut law could not possibly condone an award of some $9,000 in "punitive" damages in a case involving only $1,000 in actual damages.[2]

■ The flaw in defendant's argument is that the Connecticut rule of

1. Section 1332 provides in pertinent part:
 "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
 (1) citizens of different States . . . . "

2. Defendant also asserts that plaintiff cannot escape the nonaggregation rule by claiming the costs of litigating for an entire class as punitive damages to which he is individually entitled.

punitive damages relates to actual and not necessarily *reasonable* costs of litigation, and thus does not necessarily disallow a judgment of punitive damages many times the amount of actual damages caused by a tórt, if the plaintiff can show that he has really expended such an amount in seeking vindication of his legal rights. Thus defendant's argument as to the "legal certainty" of plaintiff not recovering $9,000 in punitive damages amounts only to speculation, however reasonable, as to how much the action will cost plaintiff, and how much plaintiff is willing to spend. Yet the general rule laid down in St. Paul Mercury Indemnity Co. v. Red Cab Co., *supra*, clearly affords the plaintiff, not the defendant, the initiative in speculating as to the amount the plaintiff may be entitled to recover. In order successfully to controvert the plaintiff's claim of the jurisdictional amount, the defendant must either demonstrate the legal impossibility of the plaintiff's recovering the jurisdictional amount, or show that the plaintiff's initial speculation as to his possible recovery was made in bad faith. By claiming in the instant case that plaintiff's prayer is unreasonably speculative, defendant is really challenging plaintiff's good faith rather than establishing with any legal certainty a ceiling to plaintiff's possible recovery of punitive damages.

### Speculativeness of Claim as Basis for Inference of Bad Faith

It is an unresolved question to what extent bad faith may be inferred from the extreme speculativeness of a claim for unliquidated damages or, as here, exemplary damages. The Supreme Court appeared to dispose of this issue in 1961 by treating good faith and legal certainty as but two sides to a single coin. The Court thereby seemed to state that bad faith could be found only when a prayer was made for damages which could be shown to a legal certainty to be unrecoverable. "The general federal rule has long been to decide what the amount in controversy is from the com-

plaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.' In deciding this question of good faith we have said that it 'must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961).

The Courts of Appeals have been loath to follow literally the Supreme Court's equation of the bad faith and legal certainty tests, at least where there is *objective* evidence of bad faith to supplement the inference of bad faith subjectively drawn from an exorbitant and speculative claim of damages. Thus a prayer for an amount of damages which while speculative is legally possible of recovery is treated as creating a rebuttable but not a conclusive presumption of good faith. The Second Circuit has recognized that "flagrant cases may arise in which, even though the complaint demands unliquidated damages in excess of $10,000, dismissal is proper because the district court can justifiably conclude that the amount demanded was inflated solely in order to gain access to the federal courts." Deutsch v. Hewes Street Realty Corp., 359 F.2d 96, 100 (2d Cir. 1966). The Eighth Circuit has prefaced a declaration that "in resolving the question of the appropriateness of jurisdiction as measured by the legal certainty of plaintiff's claim, all doubts should be resolved by the district court in favor of allowing a plenary trial . . . .," with the admonition that "the plaintiff's allegations of requisite jurisdictional amount are not necessarily dispositive of the issue. Were it otherwise, the statutory limitation would be rendered nugatory, and a patently frivolous claim could create federal jurisdiction." Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969). And the Third Circuit has recast the legal certainty standard in relative rather than absolute terms: "Plaintiff has the burden of proving that the legal impos-

sibility of recovering $10,000 is not so certain as to negative his good faith in asserting the claim." Davis v. Schultz, 453 F.2d 497, 501 (3d Cir. 1971). See also Gill v. Allstate Ins. Co., 458 F.2d 577, 579 (6th Cir. 1972).

Absent some objective evidence of bad faith, cases passing on the jurisdictional sufficiency of claims relying on exemplary damages to reach the jurisdictional amount have consistently held that dismissal is warranted only where the applicable law does not permit the award of *any* punitive damages. Wood v. Stark Tri-County Bldg. Trades Council, 473 F.2d 272, 274 (6th Cir. 1973); Givens v. W. T. Grant Co., *supra,* 457 F.2d at 614; Euge v. Trantina, 422 F.2d 1070, 1073–1074 (8th Cir. 1970); Davenport v. Mut. Benefit Health & Acc. Assoc., 325 F.2d 785, 787–789 (9th Cir. 1963). See also Cox v. Livingston, 407 F.2d 392, 393 (2d Cir. 1969). Where the applicable law does allow recovery of punitive damages, Wood v. Stark Tri-County Bldg. Trades Council, *supra,* refused to require "any mathematical relationship between the actual and punitive damages [claimed] in a particular case" in assessing whether the jurisdictional amount has been placed in sufficient controversy to confer diversity jurisdiction on the district court. 473 F.2d at 274. *Wood* justified this result by noting that the state law there concerned had condoned a $15,000 award of punitive damages in a case in which only $900 of actual damages had been found. *Ibid.*

### Plaintiff's Claim Insufficient On Its Face

▮▮▮ In the instant case the applicable law does not disallow the recovery of exemplary damages, but does liquidate such damages in the amount of litigation expenses actually incurred.

Thus while it is not legally certain that plaintiff cannot recover the jurisdictional amount, such an award is nevertheless extremely unlikely. Fortunately, I need not decide at this time whether such a recovery is so unlikely as to render plaintiff's prayer "patently frivolous," Zunamon v. Brown, *supra,* 418 F.2d at 885, and thereby make this a "flagrant case" in which I could "justifiably conclude that the amount demanded was inflated solely in order to gain access to the federal courts." Deutsch v. Hewes Street Realty Corp., *supra,* 359 F.2d at 100. Even accepting plaintiff's claim in full as made in good faith and possible of recovery, it remains that plaintiff has, by asking for *exactly* $10,000.00, see p. 304, *supra,*[3] failed to place in controversy an amount which *"exceeds* the sum or value of $10,000, exclusive of interest and costs." (Emphasis added.) 28 U.S.C. § 1332(a). A claim limited to $10,000 cannot confer jurisdiction on this Court. Motorists Mut. Ins. Co. v. Simpson, 404 F.2d 511, 515–516 (7th Cir. 1968), cert. denied, 394 U.S. 988, 89 S.Ct. 1470, 22 L.Ed.2d 763 (1969); Powers v. Fultz, 404 F.2d 50, 52 (7th Cir. 1968).

▮▮▮ Plaintiff is, of course, entitled to leave to amend his complaint. But when an initial prayer proves defective at conferring jurisdiction, and the complaint is amended so as to raise the prayer above the jurisdictional amount, the plaintiff may find that he has provided the court with the objective evidence of a colorable claim necessary to dismiss an action seeking highly speculative damages despite the jurisdictionally liberal presumption in favor of the plaintiff's good faith. Absent some showing of "[a] change of circumstances or developing injuries to explain the inflation of the claim which alone [gives] color of federal jurisdiction,"

---

3. Insofar as plaintiff's prayer might be construed as seeking $10,000 in actual and punitive damages *plus* an additional amount in costs, disbursements, attorneys' fees, and interest, it is clear from the statute that costs and interest may not be included in the calculation of the jurisdictional amount. Moreover, disbursements and attorneys' fees are necessarily included, under Connecticut law, in the punitive damages claimed as part of the $10,000 figure.

**308**

Arnold v. Truccoli, 344 F.2d 842, 846 (2d Cir. 1965), amendment of a claim after a finding of jurisdictional inadequacy provides "independent evidence . . . tending to show that the claim [has] been inflated solely to exceed the jurisdictional threshold." Deutsch v. Hewes Street Realty Corp., *supra*, 359 F.2d at 100.

Plaintiff's third "cause of action" is dismissed for lack of jurisdiction.

### Plaintiff Contends Civil Remedy Implied In Penal Patent Statute

■ Plaintiff's first "cause of action" is based on 35 U.S.C. § 33, which provides: "Whoever, not being recognized to practice before the Patent Office, holds himself out or permits himself to be held out as so recognized, or as being qualified to prepare or prosecute applications for patent, shall be fined not more than $1,000 for each offense." The statute has been held in this Circuit to apply to persons not registered as patent practitioners who, while not holding themselves out as recognized to practice before the Patent Office, nevertheless represent themselves as "possessing particular skill or 'know-how'" in the preparation of patents. United States v. Blasius, 397 F.2d 203 (2d Cir. 1968), cert. granted, 393 U.S. 950, 89 S.Ct. 375, 21 L.Ed.2d 557 (1968), cert. dismissed, 393 U.S. 1008, 89 S.Ct. 615, 21 L.Ed.2d 557 (1968). Plaintiff claims defendant's conduct in representing himself to plaintiff as qualified to prepare plaintiff's patent application violated 35 U.S.C. § 33, and plaintiff seeks to recover from defendant through the civil remedy plaintiff contends is implicit in the statute. If 35 U.S.C. § 33 does create an implied civil right of recovery in plaintiff, then this Court has jurisdiction of plaintiff's first "cause of action" under 28 U.S.C. § 1338(a),[4] since such an implied right

necessarily "arises under" Congressional patent legislation.

### General Rule Supports Plaintiff

■ There is ample support for the general proposition that penal statutes create implied civil rights of recovery in the class the statutes were meant to protect. "A disregard of the command of [a penal] statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, according to a doctrine of the common law expressed in . . . the maxim, *Ubi jus ibi remedium*." Texas & Pacif. Ry. Co. v. Rigsby, 241 U.S. 33, 39–40, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916). In a leading Second Circuit case, Judge Learned Hand applied "the doctrine which, in the absence of contrary implications, construes a criminal statute, enacted for the protection of a specified class, as creating a civil right in members of the class, although the only express sanctions are criminal." Reitmeister v. Reitmeister, 162 F.2d 691, 694 (2d Cir. 1947). After citing both *Rigsby* and J.I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), and referring to *Reitmeister*, among other cases, the Supreme Court more recently declared:

"In those cases we concluded that criminal liability was inadequate to ensure the full effectiveness of the statute which Congress had intended. Because the interest of the plaintiffs in those cases fell within the class that the statute was intended to protect, and because the harm that had occurred was of the type that the statute was intended to forestall, we held that civil actions were proper. That conclusion was in accordance with a general rule of the law of torts. See Restatement (Second) of Torts § 286." Wyandotte Co. v. United States, 389

4. Section 1338(a) provides:
"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases."

U.S. 191, 202, 88 S.Ct. 379, 386, 19 L. Ed.2d 407 (1967).

### Precedent Supports Plaintiff

 United States v. Blasius, *supra,* reviewed the legislative history of 35 U. S.C. § 33 and found that it represented "a continuing effort on the part of Congress for the protection of the public to restrict to those who have met the standards of professional skill and ethics set up by the Patent Office, the rendering of advice and assistance in the presentation and prosecution of applications for patents." 397 F.2d at 206. *Blasius* accordingly found the statute "designed to protect the innocent public from the misrepresentations of unscrupulous and unqualified persons who hold themselves out as competent to prepare patent applications." *Id.* at 207. It is clear from this declaration of the purpose of 35 U. S.C. § 33 that plaintiff is "one of the class for whose especial benefit the statute was enacted," Texas & Pacif. Ry. Co. v. Rigsby, *supra,* 241 U.S. at 39, and hence should be afforded a civil remedy against defendant in effectuation of the Congressional prohibition of the conduct defendant is alleged to have committed. And indeed it has been held in Arnesen v. Raymond Lee Organization, Inc., 333 F. Supp. 116, 117–118 (C.D. Cal. 1971), that 35 U.S.C. § 33 does establish an implied civil right of action against violators of its penal provisions, and that one in plaintiff's alleged position may avail himself of this right of action.

### Defendant's Argument Against Following Arnesen

Defendant has urged this Court not to follow *Arnesen,* relying principally on Judge Friendly's able opinion in T.B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir. 1964). That case held that an action to determine who among competing claimants owned a copyright which had gone through several assignments did not "arise under" the copyright laws of the United States, and hence was not within the jurisdiction of the district courts under 28 U.S.C. § 1338(a). The decision was based on the fact that the Copyright Act grants no express remedy for one whose claim to proceeds under a copyright is disputed, but whose copyright itself had not been infringed. In so ruling, the court expressly distinguished *Reitmeister* and similar cases.

"The relevant statutes create no explicit right of action to enforce or rescind assignments of copyrights, nor does any copyright statute specify a cause of action to fix the locus of ownership. To be sure, not every federal cause of action springs from an express mandate of Congress; federal civil claims have been 'inferred' from federal statutes making behavior criminal or otherwise regulating it. [Citing *Reitmeister* and other authority.] *Such statutes invariably impose a federal duty* and usually create some express remedy as well, while the relevant copyright provision merely authorizes an assignment by written instrument, 17 U.S.C. § 28. It is true that although this difference carries the present case outside the classic doctrine of implied remedies, see Restatement, Torts § 286 (1934), expansion may not be foreclosed where appropriate, cf. Wheeldin v. Wheeler, 373 U.S. 647, 661–663, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (Brennan, J., dissenting)[5] . . . . " Emphasis added.) 339 F.2d at 827.

 Defendant's argument for the application of *Harms* stresses that plaintiff may bring a common law action under state law for defendant's alleged misrepresentation of his professional qualifications, and concludes that 35 U.S. C. § 33 "simply provides a criminal sanction for violation of a duty which pre-existed at common law." In so arguing defendant has overlooked the fact that the licensing of patent practitioners has become, by Congressional

---

5. *Compare* Justice Brennan's opinion for the Court in Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 392–397, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971).

pre-emption, a matter of exclusively federal concern. Sperry v. Florida, 373 U. S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). Thus whatever the duties of due care and fair representation of *ability* which the states may impose under their common and statutory law, see *id.* at 402 n.45; Voight v. Kraft, 342 F. Supp. 821 (D. Idaho 1972), the duty not to engage in a patent practice without the requisite federal *authority*, whatever the practitioner's ability, is a duty imposed exclusively by federal law through 35 U.S.C. § 33.[6] It follows that the holding in *Arnesen* that a civil right of action was created by implication when Congress enacted 35 U.S.C. § 33 is entirely consistent with the *Harms* case, which recognized in regard to cases such as *Reitmeister* that implied federal civil remedies might properly be found in statutes imposing federal duties. I accordingly follow *Arnesen* herein. Defendant's motion to dismiss plaintiff's first "cause of action" which asserts a civil right of recovery under 35 U.S.C. § 33, is denied.

*Plaintiff Not Permitted to Bring Class Action*

 Plaintiff's claim that defendant obtained fees from plaintiff as consideration for defendant's services in preparing plaintiff's application for a patent for presentation to the Patent Office; when defendant was not licensed to provide such services, calls for inquiry into the facts of this particular case. This is not a case where defendant was rendering a service to a large number of inventors in connection with the same patent application. There is nothing to show that there is any relationship whatever to any claim of any other person. Whether defendant has engaged in such conduct with any other inventors in pursuit of a patent could be determined only by scrutiny of facts peculiar to his relationship with each such inventor. Accordingly, I hold that this suit may not be maintained as a class action. Fed.R.Civ.P. 23. *Cf.* Zahn v. International Paper Co., 469 F.2d 1033 (2d Cir. 1972).

So ordered.

---

6. United States v. Blasius, *supra*, 397 F.2d at 207, declared that a person not registered with the Patent Office has a federal duty under 35 U.S.C. § 33 not to represent himself as "qualified" to prepare patent applications, no matter how much skill or technical knowledge he may possess. *Blasius* likened the statute's object of "preclusion of non-recognized practitioners from holding themselves out 'as being qualified to prepare . . . applications for patent'" to "the many rules and statutes forbidding the practice of law or medicine by those not licensed to do so. It would be odd, indeed, if a court were to hold that a person not licensed to practice law or medicine could nevertheless lawfully hold himself as qualified to give skilled professional services for hire in either or both of these fields so long as he did not state or imply that he was licensed to do so."