**James SCHREIBER, Plaintiff,**

v.

**Gary BLANKFORT and Precision Porsche Audi, Inc., Defendants.**

**Civ. No. B–76–368.**

United States District Court,
D. Connecticut.

Nov. 1, 1977.

James Schreiber, pro se.

Gary Blankfort, pro se.

James F. Early, New Haven, Conn., for defendant Precision Porsche Audi, Inc.

## MEMORANDUM OF DECISION

DALY, District Judge.

This is an action for damages and other relief brought by James Schreiber, a resident of Connecticut, against Gary Blankfort, a resident of New York, and Precision Porsche-Audi, Inc. (Precision), a New Jersey corporation with its principal place of business in that state. The conduct in question surrounds the plaintiff's purchase of a used 1971 Mercedes-Benz automobile from the defendants in February, 1976. The complaint includes allegations of fraud, misrepresentation, breach of warranty, agency, aiding and abetting, and conspiracy.

Defendant Blankfort filed his answer to the complaint on March 8, 1977, and included as an affirmative defense a claim that the sum in controversy failed to meet the jurisdictional requirements of 28 U.S.C. § 1332(a) (1970). A motion was later filed by Precision to dismiss the action for lack of subject matter jurisdiction, for lack of personal jurisdiction, and for improper venue, F.R.Civ.P. Rule 12(b)(1)–(3), accompanied by a motion for a more specific statement, F.R.Civ.P. Rule 12(e).

■ Defendant Blankfort informed the court by letter filed on June 1, 1977, that he wished to join in the Rule 12 motions made by his co-defendant. Lack of subject matter jurisdiction may be raised at any time during the proceedings, therefore the court will consider this issue in relation to both defendants. However, the other objections raised by Precision and joined by Blankfort must be presented by motion or included in the responsive pleading. F.R.Civ.P. Rule 12(h)(1). The failure of defendant Blankfort to object until after filing his answer constitutes a waiver. See, e.g., O'Connor v. Western Freight Association, 202 F.Supp. 561, 564 (S.D.N.Y.1962) (in personam jurisdiction); St. Hilaire v. Shapiro, 407 F.Supp. 1029 (E.D.N.Y.1976) (venue); Tractor & Equipment Corp. v. Chain Belt Co., 2 F.R.D. 206 (S.D.N.Y.1941) (more definite statement). The court therefore will consider the remaining Rule 12 issues only in relation to the corporate defendant.

## I. SUBJECT MATTER JURISDICTION

■ Jurisdictional Amount. Both defendants have challenged the plaintiff's ability to meet the $10,000 jurisdictional threshold for diversity cases found in 28 U.S.C. § 1332(a) (1970). Under the test established by the Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

■ The complaint asks for compensatory damages of $2,678 and punitive damages of $10,000. Under Connecticut tort law, punitive damages are limited to "the amount of the expenses of litigation in the suit, less taxable costs." Collens v. New Canaan Water Co., 155 Conn. 477, 488, 234 A.2d 825, 831 (1967). Because state law thus allows the recovery of attorneys' fees as part of the plaintiff's claim, that sum is includible in the jurisdictional amount. De-Lorenzo v. Federal Deposit Insurance Corp., 259 F.Supp. 193, opinion on reargument adhered to, 268 F.Supp. 378 (S.D.N.Y.1967).

■ Defendants argue that there is a legal certainty that the plaintiff's attorney's fees will not bridge the gap between the requested compensatory damages and the jurisdictional minimum. Were the plaintiff limited to the relief specified in the complaint, the court would be required to scrutinize closely the plaintiff's request for punitive damages. But the plaintiff in his memorandum and during oral argument has proposed recission as an alternative form of relief. Under the modern pleading policy of the federal courts, the plaintiff

may be granted any relief to which he is entitled under the facts; the court need not limit itself to the specific relief requested in the complaint. *See Rental Development Corp. of America v. Lavery*, 304 F.2d 839 (9th Cir. 1962); *Truth Seeker Co. v. Durning*, 147 F.2d 54 (2d Cir. 1945).

■ Under this second theory, the plaintiff might recover the purchase price of $4,850, the $2,678 subsequently expended on repairs, taxes of $350, and $300 spent for new tires. Thus the plaintiff would have to expend less than $1,900 in attorneys' fees to surpass the $10,000 mark. The latter amount is not so large that it raises substantial doubt in the court's mind as to the validity of the plaintiff's jurisdictional claim. As pointed out by Judge Blumenfeld in *LeBlanc v. Spector*, 378 F.Supp. 301, 306 (D.Conn.1973), punitive damages are recoverable for actual, rather than merely reasonable, costs of litigation. Thus the amount recoverable will in large part depend upon the plaintiff's willingness and ability to incur legal fees. Defendants have failed to show the legal certainty required, therefore subject matter jurisdiction rests with the court on the basis of diversity of citizenship.

■ *Federal Question Jurisdiction.* Subject matter jurisdiction has also been asserted on the basis of 18 U.S.C. § 1343 (1970), a criminal statute dealing with fraud through the use of interstate wire communications. Plaintiff asks the court to graft a civil action for damages onto this criminal law, and seeks support from *LeBlanc v. Spector*, *supra* at 308–10. In that case, Judge Blumenfeld implied a civil action for monetary relief on the basis of an alleged violation of a federal statute prohibiting persons not registered to practice before the U.S. Patent Office from holding themselves out as qualified to prepare or process patent applications. Although *LeBlanc* might well be persuasive standing alone, much has happened since that case which requires this court to reject federal question jurisdiction.

First, the Fifth Circuit Court of Appeals has held that the specific criminal statute utilized by plaintiff Schreiber does not constitute a jurisdictional ground for private actions. *See Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634 (5th Cir. 1974); *Bell v. Health-Mor, Inc.*, 549 F.2d 342 (5th Cir. 1977); *cf. Oppenheim v. Sterling*, 368 F.2d 516, 518–19 (10th Cir. 1966) (federal statutes covering mail fraud held not bases for civil actions). More importantly, the Supreme Court in the 1975 case of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), listed four criteria for implying a civil remedy from a federal criminal statute. Only the final element need concern us here, *i.e.*, whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." *Id.* at 78, 95 S.Ct. at 2088. Plaintiff already has an action for fraud and misrepresentation under Connecticut tort law. Recognition of an implied cause of action in this case would constitute a redundant remedy, clearly an improper result under *Cort. See Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 40–41, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). The plaintiff's assertion of federal question jurisdiction is without merit. As to that portion of the complaint based upon 18 U.S.C. § 1343 (1970), the suit is dismissed.

## II. PERSONAL JURISDICTION

Upon elimination of the federal question issue, jurisdiction over the subject matter remains only on the basis of diversity of citizenship. Jurisdiction over the parties in a diversity suit is based on state law, subject to constitutional limits. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222 (2d Cir. 1963). Defendant Precision challenges both aspects of this court's exercise of personal jurisdiction, as permitted under F.R.Civ.P. Rule 12(b)(2).

■ Jurisdiction over the defendant foreign corporation in this diversity case is based on Conn.Gen.Stat. § 33–411(c) (1977).[1]

1. Conn.Gen.Stat. § 33–411(c) (1977) provides in part:

That statute establishes four categories of foreign corporations subject to suit in Connecticut even though not formally transacting business in the state. Under § 33–411(c)(1), the defendant is subject to the jurisdiction of this court if the suit arises "out of any contract made in this state or to be *performed* in this state." (Emphasis added). Under the record of this proceeding, the court finds that the contract was performed by delivery of the automobile to the plaintiff's home in Greenwich, Connecticut.[2] *Cf. Scher v. HMH Publishing Co.*, 289 F.Supp. 917 (D.Conn.1968); *Carvette v. Marion Power Shovel Co.*, 157 Conn. 92, 249 A.2d 58 (1968). In light of this factual determination, the applicability of the Connecticut long-arm statute is clear.

The question thus becomes whether the exercise of jurisdiction over the defendant corporation is consistent with "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). For guidance in determining whether the corporate defendant's contacts with Connecticut subjected it to the jurisdiction of this court, we turn to two paradigmatic Supreme Court cases, *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In *McGee*, the jurisdictional threshold was not high. The respondent Texas corporation had mailed a reinsurance certificate to petitioner's son in California. The son accepted the offer of reinsurance and mailed the premiums to the respondent in Texas. The Court held that jurisdiction over the respondent by the California courts was consistent with the due process clause because the suit arose from a contact that had a "substantial connection" with that state. *Id.* 355 U.S. at 223, 78 S.Ct. 199. A year later, however, the Court in *Hanson* added a caveat to the emerging doctrine of minimum contacts. At issue was the appropriateness of a Florida forum to determine the validity of a trust agreement made in Delaware by a business incorporated there and by a settlor domiciled in Pennsylvania. The settlor had subsequently moved to Florida, where she received trust payments, and on occasion handled matters of trust administration through the mail. In its refusal to admit jurisdiction, the Court emphasized the "unilateral" character of the trust activity. *Id.* 357 U.S. at 253, 78 S.Ct. 1228. "[I]t is essential in each case," the court explained, "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*

The defendant corporation's conduct in this case was similarly limited, yet purposeful. On February 14, 1977, an employee of Precision drove the automobile into Connecticut to allow the plaintiff to examine it briefly at his home in Greenwich. After viewing the vehicle and coming to an oral agreement with defendant Blankfort by telephone, the plaintiff handed the corporate defendant's employee a check for $100 as a deposit. The employee then drove the car back to New York. Upon Blankfort's final delivery of the automobile to the plaintiff's home three days later, an employee of the defendant picked up Blankfort at that location and returned him to New York.[3]

In the court's view, these actions were at least as substantial as the contacts found sufficient in *McGee, supra,* and equivalent

---

2. Every corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows; (1) Out of any contract made in this state or to be performed in this state . . .

2. *See* Affidavit of Plaintiff, June 10, 1977, ¶ 9 at 4, and Exhibit C; Affidavit of Plaintiff, July 19, 1977, ¶ 4(c) at 3, and ¶ 4(e) at 4. *But see* Affidavit of Defendant Blankfort, June 14, 1977, ¶ 6 at 2.

3. The late filed affidavit of the President of Precision Porsche Audi, Inc., has been considered on this issue and is found consistent with the court's finding.

in quality to the contacts found necessary in *Hanson, supra.* Defendant Precision, through the actions of its employees, enjoyed the advantages of Connecticut law by voluntarily bringing the automobile into the state to induce the plaintiff's purchase, by accepting the $100 deposit, and by entering the state later to provide the other defendant with transportation back to New York following delivery. *Cf. Agrashell, Inc. v. Bernard Sirotta, Co.,* 344 F.2d 583, 589 (2d Cir. 1965); *Electric Regulator Corp. v. Sterling Extruder Corp.,* 280 F.Supp. 550, 556 (D.Conn.1968). In doing so, defendant Precision submitted itself to the personal jurisdiction of this forum. The motion to dismiss under F.R.Civ.P. Rule 12(b)(2) is therefore denied.

### III. VENUE

Defendant Precision has moved under F.R.Civ.P. Rule 12(b)(3) to dismiss for improper venue. The general venue statute provides that a civil action based solely on diversity of citizenship may be brought "only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." 28 U.S.C. § 1391(a) (1970). The sole plaintiff in this case resides in Connecticut. Although defendant Blankfort resides in New York, defendant Precision bases its request for dismissal on the greater convenience of a *New Jersey* forum. Because only the corporate defendant resides in New Jersey, the single basis for venue there would be that the claim "arose" in that state.

The general venue statute permits venue "where the claim arose" both in pure diversity cases such as the present suit, and in cases involving federal questions, 28 U.S.C. § 1391(b) (1970). Courts have interpreted this phrase in a variety of ways. *See, e.g., Iranian Shipping Lines, S. A. v. Moraites,* 377 F.Supp. 644, 648 (S.D.N.Y. 1974) (place of injury; § 1391(b)); *Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886 (S.D.N.Y.1974) (weight of contacts; § 1391(b)); *M. Dean Kaufman, Inc. v. Warnaco, Inc.,* 299 F.Supp. 722, 724 (D.Conn.1969) (where contract entered into;

§ 1391(a)). Subsequent to *Kaufman,* a dispute grew among the district courts of this circuit over whether the determination of "where the claim arose" under § 1391(a) should be made according to state or federal law. *Contrast Wahl v. Foreman,* 398 F.Supp. 526, 529 (S.D.N.Y.1975) (state law), *and Uniroyal, Inc. v. Heller,* 65 F.R.D. 83 (S.D.N.Y.1974) (state law), *with Rosen v. Savant Instruments, Inc.,* 264 F.Supp. 232, 236–37 (E.D.N.Y.1967) (federal law), *and Jaffe v. Dolan,* 264 F.Supp. 845, 848 (E.D.N.Y.1967) (federal law). The court in *Kaufman* made no mention of state law in its decision, and there appears to be little reason in this case as well to apply Connecticut law.

The decisions utilizing state law are based on the reasoning of *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252 (E.D.Pa.1968), where the court applied the doctrine of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to its interpretation of a Sixth Circuit decision ostensibly holding that venue was a substantive right. *See Still v. Rossville Crushed Stone Co.,* 370 F.2d 324 (6th Cir. 1966), *cert. denied,* 387 U.S. 918, 87 S.Ct. 2030, 18 L.Ed.2d 970 (1967). The *Still* and *Philadelphia* decisions thus serve as the foundation for those cases deeming state law applicable, and with these two cases this court must disagree.

In *Erie R. Co. v. Tompkins, supra,* the dispute over the application of federal or state law related to a legal question upon which Congress had not acted. The Justices were concerned with the validity of federal common law, not federal legislation. The court concluded in *Erie* that in diversity cases the law to be applied was the law of the state, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress . . . ." *Id.* 304 U.S. at 78, 58 S.Ct. at 822. This exception was broadly articulated in the more recent diversity case of *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). At issue was the validity of F.R.Civ.P. Rule 4(d)(1), which prescribed a manner of serving process that

was contrary to Massachusetts law. Application of the federal rule in the diversity case was found proper, not because the legal issue was one of procedure rather than substance, but because

the constitutional provision for a federal court system (augmented by the Necessary and Proper Clause) carries with it congressional power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, through falling within the uncertain area between substance and procedure, are rationally capable of classification as either. *Cf. McCulloch v. Maryland*, 4 Wheat. 316, 421.

380 U.S. at 472, 85 S.Ct. at 1144. This congressional power certainly encompasses the establishment of a rule governing the availability of particular district courts as forums for diversity suits. The task of determining "where a claim arose" under 28 U.S.C. § 1391(a) (1970) is, therefore, one of federal statutory interpretation. In concluding that state law does not apply, the court finds itself in good company. *See* 1 Moore's Federal Practice ¶ 0.142[5.–2], at 1423–35 (2d ed. 1977); 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3803, at 11–13 (1976).

It is clear from the record thus far that none of the interpretations of "where the claim arose" under federal law will support venue in New Jersey. The contacts with that state were far less significant than those with either New York or Connecticut, in which states the alleged misrepresentations occurred and the contract was made. Thus the suggested New Jersey forum would be improper, and the request for dismissal on the basis of venue must be denied.

## IV. MORE DEFINITE STATEMENT

Defendant Precision has moved for a more definite statement under F.R.Civ.P. Rule 12(e). The rule states that such a motion should be granted only if the complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." In addition,

F.R.Civ.P. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud . . . shall be stated with particularity," the objective being to assure that the defendant is apprised of the claims against him and of the acts that constitute the fraud. *Felton v. Walston & Co., Inc.*, 508 F.2d 577 (2d Cir. 1977). Nevertheless, as Professor Moore wrote, "all that is required is a concise statement of the circumstances alleged to constitute the fraud or mistake and the rule cannot be employed to require elaborate detail." 2A Moore's Federal Practice, ¶ 12.-18, at 2395 (2d ed. 1975). *See Stromillo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 54 F.R.D. 396 (E.D.N.Y.1971).

Defendant Precision requests further information concerning its alleged conduct as an accomplice, a principal, and a co-conspirator. The defendant also asks that the plaintiff be required to specify which warranty was breached, and in what manner. Much of this information is more appropriately the subject of pre-trial discovery. In addition, the accuracy of allegations concerning the defendant's conduct is within the defendant's knowledge. This is not a case where the co-conspirators are unidentified, *see, e.g., Carolina Scenic Stages, Inc. v. Greyhound Corp.*, 38 F.R.D. 313 (E.D.S.C.1965), nor where the plaintiff has failed to specify the particular contract upon which the claim is based, *see, e.g., Arnold v. Gordon Baking Co.*, 7 F.R.D. 648 (E.D.N.Y.1948). The allegations in the complaint are sufficiently clear to enable the defendant foreign corporation to respond accurately. The motion for a more definite statement is therefore without merit, and is denied.

In sum, the defendants' motion to dismiss directed at the plaintiff's claim for damages arising from the alleged violation of 18 U.S.C. § 1343 (1970) is granted for lack of subject matter jurisdiction. As to all other items, the motions are denied.